# Exhibit A



**State of Missouri**

**John R. Ashcroft, Secretary of State**

Corporations Division
PO Box 778 / 600 W. Main St., Rm. 322
Jefferson City, MO 65102

001377186
**Date Filed: 7/25/2019**
**John R. Ashcroft**
**Missouri Secretary of State**

# Articles of Incorporation

### Article One

The name of the corporation is:   Botannis Labs Mo. Corp

### Article Two

The registered agent's name is:    Henry  Elster

The address, including street and number for the registered agent's office in the state of Missouri is:
*(PO Box may only be used in addition to a physical street address)*

| 101 South Hanley, Suite 1280 | Saint Louis | MO   63105 |
|---|---|---|
| *Street Address* | *City* | *State/Zip* |

### Article Three
*(Must complete 1 or 2)*

1. If the aggregate number of shares in which the corporation shall have authority to issue DOES NOT exceed 30,000 shares or the par valued DOES NOT exceed $30,000 please check this box: ☐

**or**

2. If the aggregate number of shares in which the corporation shall have authority to issue exceeds 30,000 shares or the par value exceeds $30,000 dollars please indicate the number of shares of each class and the par value of each share. Also, indicate a statement of the preferences, qualifications, limitations, restrictions and the special or relative rights including convertible right, is any, in respect of the share of each class:

| Class | No. Shares | Share Par Value | Share Notes |
|---|---|---|---|
| Common | 10000 | No Par Value | |

### Article Four

The name and physical business or residence address of each incorporator:

| Name | Address | City/State/Zip |
|---|---|---|
| Altmann, Jeff | 9209 Niles Place | Saint Louis MO 63123 |
| | | |
| | | |

*(Please see next page)*

Name and address to return filed document:

Name:   Botannis Labs Mo. Corp

Address:   Email: jeffrey@lobbymo.com

City, State, and Zip Code: _____

Corp. 41 (11/2008)

Articles of Incorporation of a For Profit Corporation

## Article Five

The date the corporation is to continue or perpetual: (Please select one)

☒ Perpetual *(check box)*                    *or*        State number of years  _____

## Article Six

The corporation is formed for the following lawful purpose(s):

Any lawful purpose.

## Article Seven

☒   The number of directors to constitute the board of directors:   2_____        (optional)

The effective date of this document is the date it is filed by the Secretary of State of Missouri unless a future date is otherwise indicated:

_____

*(Date may not be more than 90 days after the filing date in this office)*

In Affirmation thereof, the facts stated above are true and correct:

(*The undersigned understands that false statements made in this filing are subject to the penalties provided under Section 575.040, RSMo*)

| Jeff  Altmann | JEFF  ALTMANN | 07/25/2019 |
|---|---|---|
| *Signature of Incorporator(s)* | *Printed or Typed Name of Incorporator* | *Date of Signature* |

Corp. 41 (11/2008)

# STATE OF MISSOURI



### John R. Ashcroft
### Secretary of State

CERTIFICATE OF INCORPORATION

WHEREAS, Articles of Incorporation of

*Botannis Labs Mo. Corp*
*001377186*

have been received and filed in the Office of the Secretary of State, which Articles, in all respects, comply with the requirements of General and Business Corporation Law.

NOW, THEREFORE, I, JOHN R. ASHCROFT, Secretary of State of the State of Missouri, do by virtue of the authority vested in me by law, do hereby certify and declare this entity a body corporate, duly organized this date and that it is entitled to all rights and privileges granted corporations organized under the General and Business Corporation Law.

IN TESTIMONY WHEREOF, I hereunto set my hand and cause to be affixed the GREAT SEAL of the State of Missouri. Done at the City of Jefferson, this 25th day of July, 2019.



Secretary of State

# Exhibit B

EXECUTION VERSION

**Botannis Labs MO Corp.**
**a Missouri corporation**

## CONSENT IN LIEU OF MEETING OF SOLE INCORPORATOR

August 8, 2019

The undersigned, being the Sole Incorporator of Botannis Labs MO Corp., a Missouri corporation (the "Corporation"), hereby consents to the adoption of the following resolutions and agrees that said resolutions shall have the same effect as if duly adopted at a meeting of the Sole Incorporator held for the purpose:

RESOLVED:  To approve the Articles of Incorporation of the Corporation in substantially the form filed with the Missouri Secretary of State on July 25th, 2019.

RESOLVED:  To fix the number of Directors of the Corporation at two (2).

RESOLVED:  That each of the following persons is hereby elected to the board of directors of the Corporation, to hold such office until the first annual meeting of shareholders, or until his or her successor shall have been duly elected and qualified, or until his or her earlier death, resignation, or removal:

- Matt Wolf
- Daniel Altmann

RESOLVED:  To adopt the form of by-laws attached hereto as Exhibit A as the by-laws of the Corporation.

RESOLVED:  To direct that this Consent in Lieu of Meeting of Sole Incorporator (this "Consent") be filed with the records of the Corporation.

RESOLVED:  To approve the resignation of Jeff Altmann as the Sole Incorporator of the Corporation effective upon execution of this Consent.

EXECUTED as of the date first set forth above.

Jeff Altmann
Sole Incorporator

# Exhibit C

EXECUTION VERSION

August 8, 2019

Daniel Altmann
6450 Oakland Ave,
Apt A.
St. Louis, MO 63139

To: Botannis Labs MO Corp.
1770 Blake St.
Denver, CO 80203

Re:   Subscription for Shares of Common Stock

Ladies and Gentlemen:

I hereby subscribe for 5,100 shares (the "**Shares**") of common stock of Botannis Labs MO
Corp., a Missouri corporation (the "**Corporation**"), in exchange for consideration of $51.00 in
the aggregate. This is agreed to be at least 100% of the fair market value of the Shares.

All of the Shares so received will be taken by me for my own account as an investment and
not with a view to the distribution thereof.

It is understood that you will issue the Shares without their registration under the Securities
Act of 1933, as amended (the "**Act**"); therefore, the Shares may not be resold or transferred
unless they are registered under the Act or unless an exemption from registration is available.

Very truly yours,

Daniel Altmann

# Exhibit D

# BYLAWS

of

## BOTANNIS LABS MO CORP.

### (the "Corporation")

1.    Stockholders

(a)    <u>Annual Meeting</u>.  The annual meeting of stockholders shall be held for the election of directors each year at such place, date and time as shall be designated by the Board of Directors.  Any other proper business may be transacted at the annual meeting.  If no date for the annual meeting is established or said meeting is not held on the date established as provided above, a special meeting in lieu thereof may be held or there may be action by written consent of the stockholders on matters to be voted on at the annual meeting, and such special meeting or written consent shall have for the purposes of these Bylaws or otherwise all the force and effect of an annual meeting.

(b)    <u>Special Meetings</u>.  Special meetings of stockholders may be called by the Chief Executive Officer, if one is elected, or, if there is no Chief Executive Officer, a President, or by the Board of Directors, but such special meetings may not be called by any other person or persons.  The call for the meeting shall state the place, date, hour and purposes of the meeting.  Only the purposes specified in the notice of special meeting shall be considered or dealt with at such special meeting.

(c)    <u>Notice of Meetings</u>.  Whenever stockholders are required or permitted to take any action at a meeting, a notice stating the place, if any, date and hour of the meeting, the means of remote communications, if any, by which stockholders and proxyholders may be deemed to be present and vote at such meeting, and, in the case of a special meeting, the purpose or purposes of the meeting, shall be given by the Secretary (or other person authorized by these Bylaws or by law) not less than ten (10) nor more than seventy (70) days before the meeting to each stockholder entitled to vote thereat and to each stockholder who, under the Articles of Incorporation or under these Bylaws is entitled to such notice.  If mailed, notice is given when deposited in the mail, postage prepaid, directed to such stockholder at such stockholder's address as it appears in the records of the Corporation.  Without limiting the manner by which notice otherwise may be effectively given to stockholders, any notice to stockholders may be given by electronic transmission as provided in Section 351 of the Revised Statues of Missouri (the "General and Business Corporation Law of Missouri" or "<u>GBCLM</u>").

If a meeting is adjourned to another time or place, notice need not be given of the adjourned meeting if the time and place, if any, and the means of remote communications, if any, by which stockholders and proxyholders may be deemed to be

present in person and vote at such adjourned meeting are announced at the meeting at which the adjournment is taken, except that if the adjournment is for more than ninety (90) days, or if after the adjournment a new record date is fixed for the adjourned meeting, notice of the date and time of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

(d)     Quorum.  The holders of a majority in interest of all stock issued, outstanding and entitled to vote at a meeting, present in person or represented by proxy, shall constitute a quorum.  Any meeting may be adjourned from time to time by a majority of the votes properly cast upon the question, whether or not a quorum is present.   The stockholders present at a duly constituted meeting may continue to transact business until adjournment notwithstanding the withdrawal of enough stockholders to reduce the voting shares below a quorum.

(e)     Voting and Proxies.  Except as otherwise provided by the Articles of Incorporation or by law, each outstanding share entitled to vote shall be entitled to one vote on each matter submitted to a vote at a meeting of shareholders.   Each stockholder entitled to vote at a meeting of stockholders or to express consent or dissent to corporate action in writing without a meeting may authorize another person or persons to act for such stockholder by either written proxy or by a transmission permitted by RSMO Section 351.245.5, but no proxy shall be voted or acted upon after eleven months from its date, unless the proxy expressly provides for a longer period or is irrevocable, in accord with RSMO 351.245.4.  Proxies shall be filed with the Secretary of the meeting, or of any adjournment thereof.  Except as otherwise limited therein, proxies shall entitle the persons authorized thereby to vote at any adjournment of such meeting.

(f)     Action at Meeting.  When a quorum is present, any matter before the meeting shall be decided by vote of the holders of a majority of the shares of stock voting on such matter except where a larger vote is required by law, by the Articles of Incorporation or by these Bylaws.  Any election of directors by stockholders shall be determined by a plurality of the votes cast, except where a larger vote is required by law, by the Articles of Incorporation or by these Bylaws.  The Corporation shall not directly or indirectly vote any share of its own stock; provided, however, that the Corporation may vote shares which it holds in a fiduciary capacity to the extent permitted by law.

(g)     Presiding Officer.  Meetings of stockholders shall be presided over by the Chairman of the Board, if one is elected, or in his or her absence, the Vice Chairman of the Board, if one is elected, or if neither is elected or in their absence, a President.  The Board of Directors shall have the authority to appoint a temporary presiding officer to serve at any meeting of the stockholders if the Chairman of the Board, the Vice Chairman of the Board or a President, if any, is unable to do so for any reason.

(h)     Conduct of Meetings.  The Board of Directors may adopt by resolution such rules and regulations for the conduct of the meeting of stockholders as it

2

shall deem appropriate. Except to the extent inconsistent with such rules and regulations as adopted by the Board of Directors, the presiding officer of any meeting of stockholders shall have the right and authority to prescribe such rules, regulations and procedures and to do all such acts as, in the judgment of such chairman, are appropriate for the proper conduct of the meeting. Such rules, regulations or procedures, whether adopted by the Board of Directors or prescribed by the presiding officer of the meeting, may include, without limitation, the following: (i) the establishment of an agenda or order of business for the meeting; (ii) rules and procedures for maintaining order at the meeting and the safety of those present; (iii) limitations on attendance at or participation in the meeting to stockholders of record of the Corporation, their duly authorized and constituted proxies or such other persons as the chairman of the meeting shall determine; (iv) restrictions on entry to the meeting after the time fixed for the commencement thereof; and (v) limitations on the time allotted to questions or comments by participants. Unless and to the extent determined by the Board of Directors or the presiding officer of the meeting, meetings of stockholders shall not be required to be held in accordance with the rules of parliamentary procedure.

(i)     Action without a Meeting. Unless otherwise provided in the Articles of Incorporation, any action required or permitted by law to be taken at any annual or special meeting of stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by all shareholders entitled to vote on the actions to be taken and shall be delivered to the Corporation by delivery to its registered office, by hand or by certified mail, return receipt requested, or to the Corporation's principal place of business or to the officer of the Corporation having custody of the minute book.

(j)     Stockholder Lists. The officer who has charge of the stock ledger of the Corporation shall prepare and make available for inspection, beginning the earlier of ten (10) days before every meeting of stockholders, a complete list of the stockholders entitled to vote at the meeting, arranged by voting groups and within each voting group by class or series of shares, in alphabetical order within each class or series, and showing the address of each stockholder and the number of shares of each class or series registered in the name of each stockholder. Nothing contained in this Section 1(j) shall require the Corporation to include electronic mail addresses or other electronic contact information on such list. Such list shall be open to the examination of any stockholder for a period of at least ten (10) days prior to the meeting in the manner provided by law. The list shall also be produced and kept at the time and place of the meeting and shall be subject to the inspection of any shareholder during the whole meeting as provided by law.

2.     Directors

(a)     Powers. The business of the Corporation shall be managed by or under the direction of a Board of Directors who may exercise all the powers of the Corporation except as otherwise provided by law, by the Articles of Incorporation or by these Bylaws. In the event of a vacancy in the Board of Directors, the remaining

3

directors, except as otherwise provided by law, may exercise the powers of the full Board until the vacancy is filled.

(b)   Number and Qualification.   Unless otherwise provided in the Articles of Incorporation or in these Bylaws, the number of directors which shall constitute the whole board shall be determined from time to time by resolution of the Board of Directors, but in no event shall there be fewer than one Director. All Directors shall be individuals who are twenty-one years of age or older. Directors need not, but may, be stockholders.

(c)   Vacancies; Reduction of Board.   A majority of the directors then in office, although less than a quorum, or a sole remaining Director, may fill vacancies in the Board of Directors occurring for any reason and newly created directorships resulting from any increase in the authorized number of directors until the next election of directors by the shareholders of the corporation.  In lieu of filling any vacancy, the Board of Directors may reduce the number of directors.

(d)   Tenure.   Except as otherwise provided by law, by the Articles of Incorporation or by these Bylaws, the terms of the initial directors expire on the first stockholders' meeting at which directors are elected. The terms of all other directors expire on the next annual stockholders' meeting following their election. All directors shall hold office until their successors are elected and qualified or until their earlier resignation or removal.  Any director may resign at any time upon notice given in writing or by electronic transmission to the Corporation.  Such resignation shall be effective upon receipt unless it is specified to be effective at some other time or upon the happening of some other event.

(e)   Removal.   To the extent permitted by law, a director may be removed from office for cause or without cause by vote of the holders of a 75% majority of the shares of stock entitled to vote in the election of directors.

(f)   Meetings.   Regular meetings of the Board of Directors may be held without notice at such time, date and place as the Board of Directors may from time to time determine.  Special meetings of the Board of Directors may be called, orally or in writing, by the Chief Executive Officer, if one is elected, or, if there is no Chief Executive Officer, the President, or by any Director, designating the time, date and place thereof. Directors may participate in meetings of the Board of Directors by means of conference telephone or other communications equipment by means of which all directors participating in the meeting can hear each other, and participation in a meeting in accordance herewith shall constitute presence in person at such meeting.

(g)   Notice of Meetings.   Notice of the time, date and place of all special meetings of the Board of Directors shall be given to each director by the Secretary, or Assistant Secretary, or in case of the death, absence, incapacity or refusal of such persons, by the officer or one of the directors calling the meeting.  Notice shall be given to each director in person, by telephone, or by facsimile, electronic mail or other form of electronic communications, sent to such director's business or home address at least

4

twentyfour (24) hours in advance of the meeting, or by written notice mailed to such director's business or home address at least fortyeight (48) hours in advance of the meeting.

(h)     Quorum.  At any meeting of the Board of Directors, a majority of the total number of directors in office immediately before the meeting begins shall constitute a quorum for the transaction of business.  Less than a quorum may adjourn any meeting from time to time and the meeting may be held as adjourned without further notice.

(i)     Action at Meeting.  At any meeting of the Board of Directors at which a quorum is present, unless otherwise provided in the following sentence, a majority of the directors present may take any action on behalf of the Board of Directors, unless a larger number is required by law, by the Articles of Incorporation or by these By-laws.  So long as there are two (2) or fewer Directors, any action to be taken by the Board of Directors shall require the approval of all Directors.

(j)     Action by Consent.  Any action required or permitted to be taken at any meeting of the Board of Directors may be taken without a meeting if, setting forth the action so taken, all members of the Board of Directors consent thereto in writing or by electronic transmission, and the writing or writings or electronic transmission or transmissions are filed by the secretary with the records of the meetings of the Board of Directors.  Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

(k)     Committees.  The Board of Directors may, if there is more than one (1) director, by resolution passed by a majority of the whole Board of Directors, establish one or more committees, each committee to consist of two (2) or more directors.  The Board of Directors may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee.  In the absence or disqualification of a member of a committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not such member or members constitute a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in the place of any such absent or disqualified member.

Any such committee, to the extent permitted by law and to the extent provided in the resolution of the Board of Directors, shall have and may exercise all the powers and authority of the Board of Directors in the management of the business and affairs of the Corporation, and may authorize the seal of the Corporation to be affixed to all papers which may require it; but no such committee shall have the power or authority in reference to the following: (i) approving or adopting, or recommending to the stockholders, any action or matter expressly required by the General and Business Corporation Law of Missouri to be submitted to stockholders for approval or (ii) adopting, amending or repealing any provision of these By-laws.

Except as the Board of Directors may otherwise determine, any such committee

5

may make rules for the conduct of its business, but in the absence of such rules its business shall be conducted so far as possible in the same manner as is provided in these Bylaws for the Board of Directors.  All members of such committees shall hold their committee offices at the pleasure of the Board of Directors, and the Board may abolish any committee at any time.

    3.    Officers

    (a)    Enumeration.  The officers of the Corporation shall consist of one or more Presidents (who, if there is more than one, shall be referred to as Co-Presidents), a Treasurer, a Secretary, and such other officers, including, without limitation, a Chief Executive Officer and one or more Vice Presidents (including Executive Vice Presidents or Senior Vice Presidents), Assistant Vice Presidents, Assistant Treasurers and Assistant Secretaries, as the Board of Directors may determine.  The Board of Directors may elect from among its members a Chairman of the Board and a Vice Chairman of the Board.

    (b)    Election.  The Presidents, Treasurer and Secretary shall be elected annually by the Board of Directors at their first meeting following the annual meeting of stockholders.  Other officers may be chosen by the Board of Directors at such meeting or at any other meeting.

    (c)    Qualification.  No officer need be a stockholder or Director.  Any two (2) or more offices may be held by the same person.  Any officer may be required by the Board of Directors to give bond for the faithful performance of such officer's duties in such amount and with such sureties as the Board of Directors may determine.

    (d)    Tenure.    Except as otherwise provided by the Articles of Incorporation or by resolution of the Board of Directors, each of the officers of the Corporation shall hold office until such officer's successor is elected and qualified or until such officer's earlier resignation or removal.  Any officer may resign by delivering his or her written resignation to the Corporation, and such resignation shall be effective upon receipt unless it is specified to be effective at some other time or upon the happening of some other event.

    (e)    Removal.  The Board of Directors may remove any officer with or without cause by a vote of a majority of the directors then in office provided that such removal is in the best interest of the corporation, as judged by the Board of Directors and such removal shall be without prejudice to the contract rights, if any, of the officer so removed.

    (f)    Vacancies.  Any vacancy in any office may be filled for the unexpired portion of the term by the Board of Directors.

    (g)    Chairman of the Board and Vice Chairman.  Unless otherwise provided by the Board of Directors, the Chairman of the Board of Directors, if one is elected, shall preside, when present, at all meetings of the stockholders and the Board

of Directors.  The Chairman of the Board shall have such other powers and shall perform such duties as the Board of Directors may from time to time designate.

Unless otherwise provided by the Board of Directors, in the absence of the Chairman of the Board, the Vice Chairman of the Board, if one is elected, shall preside, when present, at all meetings of the stockholders and the Board of Directors.  The Vice Chairman of the Board shall have such other powers and shall perform such duties as the Board of Directors may from time to time designate.

(h)     Chief Executive Officer.  The Chief Executive Officer, if one is elected, shall have such powers and shall perform such duties as the Board of Directors may from time to time designate.

(i)     Presidents.  Subject to the direction of the Board of Directors, the President shall have general supervision and control of the Corporation's business.  If there is no Chairman of the Board or Vice Chairman of the Board, a President shall preside, when present, at all meetings of stockholders and the Board of Directors.  The President shall have such other powers and shall perform such duties as the Board of Directors may from time to time designate.

(j)     Vice Presidents and Assistant Vice Presidents.  Any Vice President (including any Executive Vice President or Senior Vice President) and any Assistant Vice President shall have such powers and shall perform such duties as the Board of Directors may from time to time designate.

(k)     Treasurer and Assistant Treasurers.  The Treasurer shall, subject to the direction of the Board of Directors, have general charge of the financial affairs of the Corporation and shall cause to be kept accurate books of account.  The Treasurer shall have custody of all funds, securities, and valuable documents of the Corporation, except as the Board of Directors may otherwise provide.  The Treasurer shall have such other powers and shall perform such duties as the Board of Directors may from time to time designate.

Any Assistant Treasurer shall have such powers and perform such duties as the Board of Directors may from time to time designate.

(l)     Secretary and Assistant Secretaries.  The Secretary shall record the proceedings of all meetings of the stockholders and the Board of Directors (including committees of the Board) in books kept for that purpose.  In the absence of the Secretary from any such meeting an Assistant Secretary, or if such person is absent, a temporary secretary chosen at the meeting, shall record the proceedings thereof.  The Secretary shall have charge of the stock ledger (which may, however, be kept by any transfer or other agent of the Corporation) and shall have such other duties and powers as may be designated from time to time by the Board of Directors.

Any Assistant Secretary shall have such powers and perform such duties as the Board of Directors may from time to time designate.

7

        (m)    <u>Other Powers and Duties</u>.  Subject to these Bylaws, each officer of the Corporation shall have in addition to the duties and powers specifically set forth in these Bylaws, such duties and powers as are customarily incident to such officer's office, and such duties and powers as may be designated from time to time by the Board of Directors.

        4.    Capital Stock

        (a)    <u>Certificates of Stock</u>.  Each stockholder shall be entitled to a certificate of the capital stock of the Corporation in such form as may from time to time be prescribed by the Board of Directors.  Such certificate shall be signed by a President or a Vice President, and by the Treasurer or an Assistant Treasurer, or the Secretary or an Assistant Secretary.  Such signatures may be a facsimile.  In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed on such certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the Corporation with the same effect as if such person were such officer, transfer agent or registrar at the time of its issue.  Every certificate for shares of stock which are subject to any restriction on transfer and every certificate issued when the Corporation is authorized to issue more than one class or series of stock shall contain such legend with respect thereto as is required by law.  The Corporation shall be permitted to issue fractional shares.

        (b)    <u>Transfers</u>.  Subject to any restrictions on transfer, shares of stock may be transferred on the books of the Corporation by the surrender to the Corporation or its transfer agent of the certificate therefor properly endorsed or accompanied by a written assignment or power of attorney properly executed, with transfer stamps (if necessary) affixed, and with such proof of the authenticity of signature as the Corporation or its transfer agent may reasonably require.

        (c)    <u>Record Holders</u>.  Except as may otherwise be required by law, the Corporation shall be entitled to treat the record holder of stock as shown on its books as the owner of such stock for all purposes, including the payment of dividends and the right to vote with respect thereto, regardless of any transfer, pledge or other disposition of such stock, until the shares have been transferred on the books of the Corporation in accordance with the requirements of these Bylaws.

    It shall be the duty of each stockholder to notify the Corporation of such stockholder's post office address.

        (d)    <u>Record Date</u>.  In order that the Corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, or to consent to corporate action in writing without a meeting, or entitled to receive payment of any dividend or other distribution or allotment of any rights, or entitled to exercise any rights in respect of any change, conversion or exchange of stock or for the purpose of any other lawful action, the Board of Directors may fix, in advance, a record date, which shall not precede the date on which it is established, and which shall not be more than seventy (70) nor less than ten (10) days

before the date of such meeting, more than ten (10) days after the date on which the record date for stockholder consent without a meeting is established, nor more than seventy (70) days prior to any other action. In such case only stockholders of record on such record date shall be so entitled notwithstanding any transfer of stock on the books of the Corporation after the record date. If the Board of Directors do not set a record date, only shareholders who are shareholders of record at the close of business on the twentieth (20) day preceding the date of the meeting shall be entitled to notice of, and to vote at, the meeting and any adjournment or postponement of the meeting.

If no record date is fixed, (i) the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the twentieth (20) day preceding the day of the meeting, or, if notice is waived via written waivers of notice signed and delivered to the corporation, at the close of business on the day next preceding the day on which the meeting is held, by all of shareholders of record at the time the meeting is convened, only the shareholders who are shareholders of record at the time the meeting is convened shall be entitled to vote at the meeting, and any adjournment or postponement of the meeting.

at the close of business on the day next preceding the day on which the meeting is held, (ii) the record date for determining stockholders entitled to consent to corporate action in writing without a meeting, when no prior action by the Board of Directors is necessary, shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the Corporation by delivery to its registered office in this state, to its principal place of business, or to an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded, and (iii) the record date for determining stockholders for any other purpose shall be at the close of business on the day on which the Board of Directors adopts the resolution relating thereto.

(e)     Lost Certificates.  The Corporation may issue a new certificate of stock in the place of any certificate theretofore issued by it, alleged to have been lost, stolen or destroyed, and the Corporation may require the owner of the lost, stolen or destroyed certificate, or his legal representative, to give the Corporation a bond sufficient to indemnify it against any claim that may be made against it on account of the alleged loss, theft or destruction of any such certificate or the issuance of such new certificate.

5.     Indemnification

(a)     Definitions.  For purposes of this Section 5:

(i)     "Corporate Status" describes the status of a person who is serving or has served (A) as a Director of the Corporation, (B) as an Officer of the Corporation, (C) as a Non-Officer Employee of the Corporation, or (D) as a director, partner, trustee, officer, employee or agent of any other corporation, partnership, limited liability company, joint venture, trust, employee benefit plan, foundation, association, organization or other legal entity for which such person

is or was serving at the request of the Corporation.  For purposes of this Section 5(a)(i), a Director, Officer or Non-Officer Employee of the Corporation who is serving or has served as a director, partner, trustee, officer, employee or agent of a Subsidiary shall be deemed to be serving at the request of the Corporation. Notwithstanding the foregoing, "Corporate Status" shall not include the status of a person who is serving or has served as a director, officer, employee or agent of a constituent corporation absorbed in a merger or consolidation transaction with the Corporation with respect to such person's activities prior to said transaction, unless specifically authorized by the Board of Directors or the stockholders of the Corporation;

(ii)     "Director" means any person who serves or has served the Corporation as a director on the Board of Directors of the Corporation;

(iii)    "Disinterested Director" means, with respect to each Proceeding in respect of which indemnification is sought hereunder, a Director of the Corporation who is not and was not a party to such Proceeding;

(iv)    "Expenses" means all reasonable attorneys' fees, retainers, court costs, transcript costs, fees of expert witnesses, private investigators and professional advisors (including, without limitation, accountants and investment bankers), travel expenses, duplicating costs, printing and binding costs, costs of preparation of demonstrative evidence and other courtroom presentation aids and devices, costs incurred in connection with document review, organization, imaging and computerization, telephone charges, postage, delivery service fees, and all other disbursements, costs or expenses of the type customarily incurred in connection with prosecuting, defending, preparing to prosecute or defend, investigating, being or preparing to be a witness in, settling or otherwise participating in, a Proceeding;

(v)     "Liabilities" means judgments, damages, liabilities, losses, penalties, excise taxes, fines and amounts paid in settlement;

(vi)    "Non-Officer Employee" means any person who serves or has served as an employee or agent of the Corporation, but who is not or was not a Director or Officer;

(vii)   "Officer" means any person who serves or has served the Corporation as an officer of the Corporation appointed by the Board of Directors of the Corporation;

(viii)  "Proceeding" means any threatened, pending or completed action, suit, arbitration, alternate dispute resolution mechanism, inquiry, investigation, administrative hearing or other proceeding, whether civil, criminal, administrative, arbitrative or investigative; and

(ix)    "Subsidiary" shall mean any corporation, partnership, limited liability company, joint venture, trust or other entity of which the Corporation owns

10

(either directly or through or together with another Subsidiary of the Corporation) either (i) a general partner, managing member or other similar interest or (ii) (A) fifty percent (50%) or more of the voting power of the voting capital equity interests of such corporation, partnership, limited liability company, joint venture or other entity, or (B) fifty percent (50%) or more of the outstanding voting capital stock or other voting equity interests of such corporation, partnership, limited liability company, joint venture or other entity.

(b)     Indemnification of Directors and Officers.  Subject to the operation of Section 5(d) of these By-laws, each Director and Officer shall be indemnified and held harmless by the Corporation to the fullest extent authorized by section 351 of the Revised Statutes of Missouri, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Corporation to provide broader indemnification rights than such law permitted the Corporation to provide prior to such amendment), and to the extent authorized in subsections (i) through (v) of this Section 5(b).

(x)     Actions, Suits and Proceedings Other than By or In the Right of the Corporation.  Each Director and Officer shall be indemnified and held harmless by the Corporation against any and all Expenses and Liabilities that are incurred or paid by such Director or Officer or on such Director's or Officer's behalf in connection with any Proceeding or any claim, issue or matter therein (other than an action by or in the right of the Corporation), which such Director or Officer is, or is threatened to be made, a party to or participant in by reason of such Director's or Officer's Corporate Status, if such Director or Officer acted in good faith and in a manner such Director or Officer reasonably believed to be in or not opposed to the best interests of the Corporation and, with respect to any criminal proceeding, had no reasonable cause to believe his or her conduct was unlawful.

(xi)     Actions, Suits and Proceedings By or In the Right of the Corporation.  Each Director and Officer shall be indemnified and held harmless by the Corporation against any and all Expenses that are incurred by such Director or Officer or on such Director's or Officer's behalf in connection with any Proceeding or any claim, issue or matter therein by or in the right of the Corporation, which such Director or Officer is, or is threatened to be made, a party to or participant in by reason of such Director's or Officer's Corporate Status, if such Director or Officer acted in good faith and in a manner such Director or Officer reasonably believed to be in or not opposed to the best interests of the Corporation; provided, however, that no indemnification shall be made under this Section 5(b)(ii) in respect of any claim, issue or matter as to which such Director or Officer shall have been finally adjudged to be liable to the Corporation for negligence or misconduct in the performance of his or her duty to the corporation by a court of competent jurisdiction, unless, and only to the extent that, the court in which such Proceeding was brought shall determine upon application that, despite adjudication of liability, but in view of all the

11

circumstances of the case, such Director or Officer is fairly and reasonably entitled to indemnification for such Expenses that such court deems proper.

(xii)   <u>Survival of Rights</u>.   The rights of indemnification provided by this <u>Section 5(b)</u> shall continue as to a Director or Officer after he or she has ceased to be a Director or Officer and shall inure to the benefit of his or her heirs, executors, administrators and personal representatives provided further that no such indemnity shall indemnify any person from or on account of such person's conduct which was finally adjudged to have been knowingly fraudulent, deliberately dishonest or willful misconduct.

(xiii)   <u>Actions by Directors or Officers</u>.   Notwithstanding the foregoing, the Corporation shall indemnify any Director or Officer seeking indemnification in connection with a Proceeding initiated by such Director or Officer only if such Proceeding (including any parts of such Proceeding not initiated by such Director or Officer) was authorized in advance by the Board of Directors of the Corporation, unless such Proceeding was brought to enforce such Officer's or Director's rights to indemnification or, in the case of Directors, advancement of Expenses under these By-laws in accordance with the provisions set forth herein.

(xiv)   <u>Success on the Merits</u>. Notwithstanding the foregoing, the Corporation shall indemnify any Director or Officer who has been successful on the merits or otherwise in any Proceeding, such Director or Officer shall be indemnified against expenses, including attorneys' fees, actually and reasonably incurred by him in connection with the Proceeding.

(c)   <u>Indemnification of Non-Officer Employees</u>.   Subject to the operation of <u>Section 5(d)</u> of these By-laws, each Non-Officer Employee may, in the discretion of the Board of Directors of the Corporation, be indemnified by the Corporation to the fullest extent authorized by the GBCLM, as the same exists or may hereafter be amended, against any or all Expenses and Liabilities that are incurred by such Non-Officer Employee or on such Non-Officer Employee's behalf in connection with any threatened, pending or completed Proceeding, or any claim, issue or matter therein, which such Non-Officer Employee is, or is threatened to be made, a party to or participant in by reason of such Non-Officer Employee's Corporate Status, if such Non-Officer Employee acted in good faith and in a manner such Non-Officer Employee reasonably believed to be in or not opposed to the best interests of the Corporation and, with respect to any criminal proceeding, had no reasonable cause to believe his or her conduct was unlawful.   The rights of indemnification provided by this <u>Section 5(c)</u> shall exist as to a Non-Officer Employee after he or she has ceased to be a Non-Officer Employee and shall inure to the benefit of his or her heirs, personal representatives, executors and administrators.   Notwithstanding the foregoing, the Corporation may indemnify any Non-Officer Employee seeking indemnification in connection with a Proceeding initiated by such Non-Officer Employee only if such Proceeding was authorized in advance by the Board of Directors of the Corporation.

(d)    Determination.  Unless ordered by a court, no indemnification shall be provided pursuant to this Section 5 to a Director, to an Officer or to a Non-Officer Employee unless a determination shall have been made that such person acted in good faith and in a manner such person reasonably believed to be in or not opposed to the best interests of the Corporation and, with respect to any criminal Proceeding, such person had no reasonable cause to believe his or her conduct was unlawful.  Such determination shall be made by (i) a majority vote of the Disinterested Directors, even though less than a quorum of the Board of Directors, (ii) a committee comprised of Disinterested Directors, such committee having been designated by a majority vote of the Disinterested Directors (even though less than a quorum), (iii) if there are no such Disinterested Directors, or if a majority of Disinterested Directors so directs, by independent legal counsel in a written opinion, or (iv) by the stockholders of the Corporation.

(e)    Advancement of Expenses to Directors Prior to Final Disposition.

(xv)    The Corporation shall advance all Expenses incurred by or on behalf of any Director in connection with any Proceeding in which such Director is involved by reason of such Director's Corporate Status within thirty (30) days after the receipt by the Corporation of a written statement from such Director requesting such advance or advances from time to time, whether prior to or after final disposition of such Proceeding.  Such statement or statements shall reasonably evidence the Expenses incurred by such Director and shall be preceded or accompanied by an undertaking by or on behalf of such Director to repay any Expenses so advanced if it shall ultimately be determined that such Director is not entitled to be indemnified against such Expenses. Notwithstanding the foregoing, the Corporation shall advance all Expenses incurred by or on behalf of any Director seeking advancement of expenses hereunder in connection with a Proceeding initiated by such Director only if such Proceeding (including any parts of such Proceeding not initiated by such Director) was (A) authorized by the Board of Directors of the Corporation, or (B) brought to enforce such Director's rights to indemnification or advancement of Expenses under these By-laws.

(xvi)    If a claim for advancement of Expenses hereunder by a Director is not paid in full by the Corporation within thirty (30) days after receipt by the Corporation of documentation of Expenses and the required undertaking, such Director may at any time thereafter bring suit against the Corporation to recover the unpaid amount of the claim and if successful in whole or in part, such Director shall also be entitled to be paid the expenses of prosecuting such claim. The failure of the Corporation (including its Board of Directors or any committee thereof, independent legal counsel, or stockholders) to make a determination concerning the permissibility of such advancement of Expenses under this Section 5 shall not be a defense to an action brought by a Director for recovery of the unpaid amount of an advancement claim and shall not create a presumption that such advancement is not permissible. The burden of proving that a Director is not entitled to an advancement of expenses shall be on the Corporation.

(xvii) In any suit brought by the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the Corporation shall be entitled to recover such expenses upon a final adjudication that the Director has not met any applicable standard for indemnification set forth in the GBCLM.

(f)    Advancement of Expenses to Officers and Non-Officer Employees Prior to Final Disposition.

(xviii) The Corporation may, at the discretion of the Board of Directors of the Corporation, advance any or all Expenses incurred by or on behalf of any Officer or any Non-Officer Employee in connection with any Proceeding in which such person is involved by reason of his or her Corporate Status as an Officer or Non-Officer Employee upon the receipt by the Corporation of a statement or statements from such Officer or Non-Officer Employee requesting such advance or advances from time to time, whether prior to or after final disposition of such Proceeding.  Such statement or statements shall reasonably evidence the Expenses incurred by such Officer or Non-Officer Employee and shall be preceded or accompanied by an undertaking by or on behalf of such person to repay any Expenses so advanced if it shall ultimately be determined that such Officer or Non-Officer Employee is not entitled to be indemnified against such Expenses.

(xix)  In any suit brought by the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the Corporation shall be entitled to recover such expenses upon a final adjudication that the Officer or Non-Officer Employee has not met any applicable standard for indemnification set forth in the GBCLM.

(g)    Contractual Nature of Rights.

(xx)    The provisions of this Section 5 shall be deemed to be a contract between the Corporation and each Director and Officer entitled to the benefits hereof at any time while this Section 5 is in effect, in consideration of such person's past or current and any future performance of services for the Corporation.  Neither amendment, repeal or modification of any provision of this Section 5 nor the adoption of any provision of the Articles of Incorporation inconsistent with this Section 5 shall eliminate or reduce any right conferred by this Section 5 in respect of any act or omission occurring, or any cause of action or claim that accrues or arises or any state of facts existing, at the time of or before such amendment, repeal, modification or adoption of an inconsistent provision (even in the case of a proceeding based on such a state of facts that is commenced after such time), and all rights to indemnification and advancement of Expenses granted herein or arising out of any act or omission shall vest at the time of the act or omission in question, regardless of when or if any proceeding with respect to such act or omission is commenced. The rights to indemnification and to advancement of expenses provided by, or granted pursuant to, this

Section 5 shall continue notwithstanding that the person has ceased to be a director or officer of the Corporation and shall inure to the benefit of the estate, heirs, executors, administrators, legatees and distributees of such person.

(xxi)   If a claim for indemnification hereunder by a Director or Officer is not paid in full by the Corporation within sixty (60) days after receipt by the Corporation of a written claim for indemnification, such Director or Officer may at any time thereafter bring suit against the Corporation to recover the unpaid amount of the claim, and if successful in whole or in part, such Director or Officer shall also be entitled to be paid the expenses of prosecuting such claim. The failure of the Corporation (including its Board of Directors or any committee thereof, independent legal counsel, or stockholders) to make a determination concerning the permissibility of such indemnification under this Section 5 shall not be a defense to an action brought by a Director or Officer for recovery of the unpaid amount of an indemnification claim and shall not create a presumption that such indemnification is not permissible.   The burden of proving that a Director or Officer is not entitled to indemnification shall be on the Corporation.

(xxii)   In any suit brought by a Director or Officer to enforce a right to indemnification hereunder, it shall be a defense that such Director or Officer has not met any applicable standard for indemnification set forth in the GBCLM.

(h)   Non-Exclusivity of Rights.   The rights to indemnification and advancement of Expenses set forth in this Section 5 shall not be exclusive of any other right which any Director, Officer, or Non-Officer Employee may have or hereafter acquire under any statute, provision of the Articles of Incorporation or these By-laws, agreement, vote of stockholders or Disinterested Directors or otherwise.

(i)   Insurance.   The Corporation may maintain insurance, at its expense, to protect itself and any Director, Officer or Non-Officer Employee against any liability of any character asserted against or incurred by the Corporation or any such Director, Officer or Non-Officer Employee, or arising out of any such person's Corporate Status, whether or not the Corporation would have the power to indemnify such person against such liability under the GBCLM or the provisions of this Section 5.

(j)   Other Indemnification.   The Corporation's obligation, if any, to indemnify or provide advancement of Expenses to any person under this Section 5 as a result of such person serving, at the request of the Corporation, as a director, partner, trustee, officer, employee or agent of another corporation, partnership, joint venture, trust, employee benefit plan or other enterprise shall be reduced by any amount such person may collect as indemnification or advancement of Expenses from such other corporation, partnership, joint venture, trust, employee benefit plan or enterprise (the "Primary Indemnitor").   Any indemnification or advancement of Expenses under this Section 5 owed by the Corporation as a result of a person serving, at the request of the Corporation, as a director, partner, trustee, officer, employee or agent of another corporation, partnership, joint venture, trust, employee benefit plan or other enterprise shall only be in excess of, and shall be secondary to, the indemnification or

advancement of Expenses available from the applicable Primary Indemnitor(s) and any applicable insurance policies.

 6. Miscellaneous Provisions

  (a) <u>Fiscal Year</u>.  Except as otherwise determined by the Board of Directors, the fiscal year of the Corporation shall end on December 31 of each year.

  (b) <u>Seal</u>.  The Board of Directors shall have power to adopt and alter the seal of the Corporation.

  (c) <u>Execution of Instruments</u>.  Subject to any limitations which may be set forth in a resolution of the Board of Directors, all deeds, leases, transfers, contracts, bonds, notes and other obligations to be entered into by the Corporation in the ordinary course of its business without director action may be executed on behalf of the Corporation by, a President, or by any other officer, employee or agent of the Corporation as the Board of Directors may authorize.

  (d) <u>Voting of Securities</u>.  Unless the Board of Directors otherwise provides, a President, any Vice President or the Treasurer may waive notice of and act on behalf of this Corporation, or appoint another person or persons to act as proxy or attorney in fact for this Corporation with or without discretionary power and/or power of substitution, at any meeting of stockholders or shareholders of any other corporation or organization, any of whose securities are held by this Corporation.

  (e) <u>Resident Agent</u>.  The Board of Directors may appoint a resident agent upon whom legal process may be served in any action or proceeding against the Corporation.

  (f) <u>Corporate Records</u>.  The original or attested copies of the Articles of Incorporation, Bylaws and records of all meetings of the incorporators, resolutions adopted relating to the characteristics, qualifications, rights, limitations and obligations of stockholders or any class or category of stockholders, minutes of all meetings of Board of Directors and stockholders, records of all actions approved for the past three years, all written communications to all stockholders or any specific class of stockholders generally within the past three years, including financial statements furnished for the past three years under Section 355.846, its most recent corporate registration report in accordance with Section 355.856, appropriate financial statements of all income and expenses and stockholders and the Board of Directors and the stock and transfer records, which shall contain the names of all stockholders, their record addresses and the amount of stock held by each, shall be kept at the principal office of the Corporation, at the office of its counsel, or at an office of its transfer agent.

  (g) <u>Articles of Incorporation</u>.  All references in these Bylaws to the Articles of Incorporation shall be deemed to refer to the Articles of Incorporation of the Corporation, as amended and in effect from time to time.

(h)    Amendments.    These Bylaws may be altered, amended or repealed, and new Bylaws may be adopted, by the stockholders or by the Board of Directors; provided, that (i) the Board of Directors may not alter, amend or repeal any provision of these Bylaws which by law, by the Articles of Incorporation or by these Bylaws requires action by the stockholders; and (ii) any alteration, amendment or repeal of these Bylaws by the Board of Directors and any new Bylaw adopted by the Board of Directors may be altered, amended or repealed by the stockholders.

(i)    Waiver of Notice.    Whenever notice is required to be given under any provision of these By-laws, a written waiver, signed by the person entitled to notice, or a waiver by electronic transmission by the person entitled to notice, whether before or after the time of the event for which notice is to be given, shall be deemed equivalent to notice.  Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting at the beginning of the meeting to the transaction of any business because the meeting is not lawfully called or convened.  Neither the business to be transacted at, nor the purpose of, any meeting needs to be specified in any written waiver or any waiver by electronic transmission.

Adopted August 8, 2019

# Exhibit E

MOLF_2150

## **Adequate Capitalization**

Our Testing Facility team has $400,000.00 in liquid capital deposited with financial institutions  under the name of Owner/CEO Matthew D. Wolf, as evidenced by the attached bank statement, that has been pledged to the Botannis Testing Facility, as evidenced by the attached affidavit of commitment. These funds have not been pledged to any other medical marijuana applicants.

All deposits are in FDIC insured financial institutions guaranteeing that at least $250,0000.00 of funds will still be available in case of insolvency.

## Affidavit of Matthew D. Wolf

STATE OF ___Colorado___
COUNTY OF ___Denver___

The undersigned, Matthew D. Wolf, being duly sworn, hereby affirms, deposes and says:

I, Matthew D. Wolf, holder of the account referenced below, hereby acknowledge my grant of a revocable pledge of $400,000.00 to BOTANNIS LABS MO CORP. for the purposes of successfully carrying out the activities described in its application.

In the following pages, I have provided documentation of the below source of liquid capital that is available to myself to pledge to BOTANNIS LABS MO CORP. that can be converted into cash quickly with little or no loss in value:

- HSBC Personal Checking Account in the name of Matthew D. Wolf with available funds of $$400,000.00.

Whereas, the total amount of liquid capital pledged to BOTANNIS LABS MO CORP., available to me and shown through documentation, is $$400,000.00.

I declare that, to the best of my knowledge and belief, the information herein is true, correct, and complete.

Executed this ___16th___ day of ___August___, 2019


_____
Matthew D. Wolf

## NOTARY ACKNOWLEDGEMENT

STATE OF _Colorado_, COUNTY OF _Denver_
On this _16_ day of _August_, _2019_, before me personally appeared
_Mathew D. Wolf_, to me known to be the person described in and who executed
the foregoing Affidavit, and, being first duly sworn on oath according to law, deposes and says
that he/she has read the foregoing Affidavit subscribed by him/her, and that the matters stated
herein are true to the best of his/her information, knowledge and belief.

_____
Notary Public

My commission expires _2/4/2022_

KATHERINE HAWKINSON
Notary Public
State of Colorado
Notary ID # 20144005665
My Commission Expires 02-04-2022

# Exhibit F

# STATE OF MISSOURI
# *DEPARTMENT OF HEALTH & SENIOR SERVICES*

### *DIVISION OF REGULATION AND LICENSURE*

## *MEDICAL MARIJUANA CERTIFICATE FOR:*

**BOTANNIS LABS MO. CORP**

215 N GRANT AVE
SPRINGFIELD, MO - 65806

### LICENSE: TES000001

IS HEREBY GRANTED A CERTIFICATE *TO CONDUCT LABORATORY TESTING OF* MEDICAL MARIJUANA AT THE ABOVE NAMED LOCATION IN ACCORDANCE WITH ARTICLE XIV OF THE MISSOURI CONSTITUTION AND THE RULES PROMULGATED THEREUNDER, SUBJECT TO ALL THE PROVISIONS THEREOF AND TO THE REGULATIONS OF THE MISSOURI DEPARTMENT OF HEALTH & SENIOR SERVICES, MEDICAL MARIJUANA REGULATORY PROGRAM.

THIS LICENSE IS ISSUED FOR THE PERIOD ENDING **12/19/2020**.



**LYNDALL FRAKER**
DIRECTOR,
SECTION FOR MEDICAL MARIJUANA REGULATION

# Exhibit G

## Confirmation of Acceptance

I, ___Matthew David Wolf_____, confirm, on behalf of the medical marijuana facility
applicant ___Botannis Labs Mo. Corp._____, that the applicant accepts the
medical marijuana facility license or certification offered by the Department of Health and Senior
Services. As part of this confirmation, I assert I have the authority to make commitments on behalf of
this medical marijuana facility and acknowledge the following:

- The issuance of a license or certification does not authorize the facility to begin operations. A
  facility will be granted final approval to operate upon passing a commencement inspection.
- The Department shall charge an annual fee once a license or certification is granted. The first
  annual fee will be due thirty (30) days after a license or certification is issued. The current fee
  schedule may be found at medicalmarijuana.mo.gov.
- The Department does not currently have a mechanism for accepting cash payments in the
  amounts that will be due for medical marijuana facility annual fees. The facility will be
  responsible for communicating to the Department, prior to submitting annual fees, the method
  of payment it plans to utilize in submitting its annual fee payment.
- This medical marijuana facility will, at all times, comply with Article XIV of the Missouri
  Constitution and all other applicable laws and regulations.
- This medical marijuana facility intends in good faith to implement the plans and commitments
  made in its application, including but not limited to those plans and commitments made in
  portions of the application on which the Department of Health and Senior Services and its third-
  party scoring vendor relied in assigning a score and rank to that application.
- Before requesting a commencement inspection, representatives of this medical marijuana
  facility will be required to attend certain orientation meetings organized by the Department of
  Health and Senior Services.
- Before requesting a commencement inspection, representatives of this medical marijuana
  facility will be required to work with Department of Health and Senior Services Licensing and
  Compliance staff to verify compliance with all minimum requirements for license/certification
  eligibility per Article XIV. This will include providing any documentation requested by the
  Department, such as property ownership records, financial records, executed leases,
  management agreements, other contracts and the like.

- If the facility does not pass a commencement inspection within one (1) year of the department issuing the license, the license may be revoked.
- No facility may assign, sell, lease, sublicense or otherwise transfer its license/certification to any other facility without department approval as set forth in 19 CSR 30-95.040(4(C).
- No facility may make any changes to ten (10) percent or more of the ownership interests of the facility without department approval as set forth in 19 CSR 30-95.040(4)(C).
- No facility may materially deviate from the proposed physical design of the facility, including its location, without department approval as set forth in 19 CSR 30-95.040(4)(C).
- No facility may combine licensed facilities in a single location without department approval as set forth in 19 CSR 30-95.040(4)(C).

Name:   Matthew David Wolf

Title/Relation to Facility:     CEO

Facility Application #:   Application Ref# 9384

Facility License #:   TES000001

Phone Number:   720-540-0012

Email Address:     matt@botannis.com

Mailing Address:   3137 Zuni St. Denver, CO 80211

Signature: _____

Date: __12/19/19_____

# Exhibit H

| | |
|---|---|
| **From:** | Matt Wolf |
| **To:** | Nick Kingsbury |
| **Subject:** | Fwd: CONFIDENTIAL UPDATE |
| **Date:** | Thursday, March 31, 2022 7:50:36 PM |
| **Attachments:** | image1.png |

Matt Wolf
631-834-0879

Begin forwarded message:


**From:** Matt Wolf <matt@wolfcap.com>
**Date:** July 20, 2019 at 12:35:39 PM EDT
**To:** jeffrey@lobbymo.com
**Subject: CONFIDENTIAL UPDATE**


 Jeff,

For discussion.

Botannis Labs MO Corp.
51% Jeffrey Altmann, President
49% Matt Wolf, CEO

Funding Commitment:
$200k at close
$300k at licensing
$500k at first revenue

Use of funds:



9:04

Matt Wolf   11:05 AM
File from iOS

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | **NEW INSTRUMENT** | | | |
| **Test** | **Instrument** | **Quantity** | **Cost Per Unit** | **Instrument Total** | **Yearly Service Cost (PM) Per Unit** | **Yearly Service (PM) Total** |
| Mycotoxins and Pesticide Myclobutanil and Synergist Piperronyl Butoxide | LC-MS/MS | 1 | 150K | 150K | 30K | 30K |
| Phytocannabinoids | UPLC or H-Class | 1 | 75K | 75K | 18K | 18K |
| Metals and Metalloids | ICP-MS | 1 | 140K | 140K | 30K | 30K |
| Digest samples for ICP-MS | Microwave Digestion | 1 | 40K | 40K | 6K | 6K |
| Residual solvents/ Pesticides | GC-MS | **1** | 120K | 120K | 20K | 20K |
| | UV-Vis | 1 | 25K | 25K | 6K | 6K |
| | Dissolution | 1 | 35K | 35K | 5K | 5K |
| | Dissolution Degasser | 1 | 20K | 20K | 5K | 5K |
| | Disintegration | 1 | 15K | 15K | 4K | 4K |
| | Micro Balance | 1 | 25K | 25K | 2K | 2K |
| | KarlFisher | 1 | 15K | 15K | 5K | 5K |
| | Purelab (purified water) | 1 | 16K | 16K | 4K | 4K |
| | Shaker | 1 | 15K | 15K | - | - |
| | Centrifuge | 1 | 20K | 20K | - | - |
| | Sonicator | 1 | 6K | 16K | - | - |
| | Glassware washer | 1 | 15K | 15K | - | - |
| | Vacuum oven | 1 | 15K | 15K | - | - |
| | pH meter | 1 | 8K | 8K | - | - |
| | Misc. | | 25K | 25K | - | - |
| | Chemicals/ Reagents/ STDs | | 20K | 20K | - | - |
| | Glassware | | 20K | 20K | - | - |
| **Total to Start New Lab** | | | | 820K | - | 135K |
| **First Year New Lab S. Total** | | | | 820K+135K =955K | | |



**Kevin Nguyen | Director, Analytical R&D**
Contract Pharmacal Corp.
150 Commerce Drive | Hauppauge, NY 11788
Office: 631-231-4610 x3403

www.cpc.com

Shared in 🔒 wvc-botannis

VP, Analytical Services $120k
Director, Quality Control $90k
Manager, Laboratory Operations $60k
Consulting $24k
Rent $36k
Interest Expense $60k
Insurance $25k
Legal $25k
Travel $25k
Food $25k
IT $25k
Other

Revenue ~$1M

COGS $500k
SGA $500k

Our goal is a break-even business supporting important infrastructure and payroll.

Matt Wolf
Chief Executive Officer
———————
WVC Holdings, Inc.
M: 631-834-0879
www.wvcholdings.com

# Exhibit I

EXECUTION VERSION

**OPTION AGREEMENT**

THIS OPTION AGREEMENT (this "Agreement") is made and entered into this 18th day of December, 2019 by and among Daniel Altmann (the "Stockholder") and Botannis Labs, Inc., a Delaware corporation ("Buyer"), on the other hand.

WHEREAS, the Stockholder owns 5,100 shares (subject to adjustment pursuant to Section 7 hereof, the "Shares") of Common Stock in Botannis Labs Mo. Corp., a Missouri corporation (the "Company"), which has applied to the Missouri Department of Health and Senior Services ("DHSS") for licensure as a medical marijuana testing laboratory (the "Business");

WHEREAS, Amendment XIV to the Missouri Constitution stipulates that medical marijuana testing laboratories must be majority owned by residents of the State of Missouri;

WHEREAS, the Stockholder is a resident of the State of Missouri and owns fifty-one percent (51%) of the Company; and

WHEREAS, the Stockholder desires to grant to Buyer, and Buyer desires to purchase from the Members, the right to acquire at a future date all of the Shares, contingent upon a change in Missouri law allowing Buyer to acquire the Shares, upon the terms and conditions contained herein.

NOW, THEREFORE, in consideration of the mutual promises, representations, warranties, covenants, conditions and agreements contained herein, and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1.      Agreement. Upon the terms and subject to the conditions of this Agreement, the Stockholder hereby grants to Buyer, and Buyer hereby accepts from the Stockholder, an option (the "Purchase Option") for Buyer or its assignee to acquire any portion or all of the Shares, at such time or times as Buyer may determine, contingent upon a change in the laws of the State of Missouri allowing non-residents of Missouri to own a majority of the Business. In consideration of the foregoing, Buyer shall pay to the Members the aggregate consideration as set forth in Section 2.

2.      Option Price. The price for the Purchase Option shall be ONE THOUSAND UNITED STATES DOLLARS ($1,000.00 USD) (the "Option Price").

3.      Payment of Option Price. At the Closing, Buyer shall convey the Option Price to the Stockholder by wire transfer, cashier's check or other good funds.

4.      Closing. The closing of the transactions contemplated hereby (the "Closing") shall occur upon mutual execution and delivery of this Agreement.

5.       Deliveries at the Closing.

(a)      At the Closing, the Stockholder shall deliver to Buyer:

(i)       an undated form of assignment of the Shares owned by each Member, in the form attached hereto as Exhibit B (the "Form of Assignment"), duly executed by the Stockholder; and

(ii)      such other documents or deliverables as may be reasonably requested by Buyer to give full effect to the transactions contemplated by this Agreement.

(b)      At the Closing, Buyer shall deliver to the Stockholder:

(i)       The Option Price; and

(ii)      such other documents or deliverables as may be reasonably requested by the Members to give full effect to the transactions contemplated by this Agreement.

6.       Purchase Option; Consideration.

(a)      Option. For a period of fifteen (15) years from the date hereof (the "Purchase Option Period"), the Stockholder hereby grants to Buyer the Purchase Option for aggregate consideration of the Option Price.

(b)      Exercise Price.  The price for the exercise(s) of the Purchase Option and purchase(s) of the Shares shall be as set forth on Exhibit A attached hereto.

(c)      Notice of Exercise. Simultaneously with the execution of this Agreement and pursuant to Section 5(a)(i), the Stockholder is executing and delivering to Buyer an undated Form of Assignment.  In order to exercise the Purchase Option, Buyer shall provide written notice (the "Exercise Notice") to the Stockholder, after which Buyer shall date a corresponding Assignment the date of such Exercise Notice and designate Buyer or its designee as the acquirer of the Shares. Upon the exercise of the Purchase Option, the Stockholder shall: (i) take all action requested by Buyer to evidence Buyer's or its assignee's ownership of all of the Shares; and (ii) execute a release of claims containing operative language in substantially the following form with respect to the Company:

> Effective immediately upon the execution of this Release, Stockholder, on its behalf and on behalf of its present, former and future affiliates and each of its and their respective officers, directors, managers, agents successors and assigns and representatives (collectively, the "Releasors"), hereby absolutely, unconditionally and irrevocably releases and forever discharges the Company, the Buyer, and their present, former and future affiliates, and their respective successors and assigns and representatives (collectively, the "Releasees") from any and all claims, causes of action, proceedings, liabilities, losses, including but not limited to the loss of any license or permit, costs, reimbursements, damages

2

(whether for compensatory, special, incidental or punitive damages, equitable relief or otherwise), demands, recoveries and indemnities of any kind, in law, at equity, or otherwise, whether known or unknown, whether concealed or hidden, whether disclosed or undisclosed, whether contingent or absolute, whether liquidated or unliquidated, whether foreseeable or unforeseeable, whether foreseen or unforeseen, whether anticipated or unanticipated, whether suspected or unsuspected and whether arising by operation of law or otherwise, including, without limitation, with respect to conduct which is negligent, grossly negligent, willful, intentional, with or without malice, or a breach of any duty or law, which such Releasors ever have had, or ever in the future may have against the Releasees and which are based on acts, events or omissions occurring up to and including immediately prior to the date of execution of this Release. Stockholder, on its behalf and for the other Releasors, hereby waives any rights he, she, it or they may have under any law which provides that a general release does not extend to claims which the releasing party does not know or suspect to exist, which if known would have affected Stockholder's willingness to enter into this Release.

7.    The Shares.  If at any time after the date hereof the Shares shall be subdivided into a greater number of shares of Common Stock, or be combined into a smaller number of shares of Common Stock, or there shall be declared any equity dividend payable in such shares, or the Stockholder acquires any additional shares of Common Stock or any other equity interests in the Company, this Agreement shall continue to apply to such greater or lesser number of Shares, as applicable, subject to the adjustments to the Exercise Price contained in Exhibit A.

8.    Representations and Warranties.  The Stockholder hereby represents to Buyer that the following statements are true and correct as of the date hereof and warrants that the same will remain true and correct during the Option Period.

   8.1.    Organization.  The Stockholder is a natural person and a resident of the State of Missouri.

   8.2.    Ownership of Interests.  The Stockholder is the sole lawful owner, beneficially and of record, and has good and valid title to the Shares, free and clear of any liens, claims or encumbrances (collectively, "Liens").  The Stockholder is not a party to or otherwise subject to any voting trust, proxy or other agreement or understanding with respect to the voting or disposition of any shares owned by the Stockholder, except for the Shareholder Agreement of the Company (the "Shareholder Agreement").  Upon the exercise of the Purchase Option with respect to the Company and compliance with applicable regulatory requirements, Buyer will acquire good and valid title to all such Shares, free and clear of any Liens, as permitted by all applicable state laws.

   8.3.    Authority of Stockholder.

3

(a)     The Stockholder has the requisite capacity, power and authority to enter into this Agreement and to perform his obligations hereunder.

(b)     This Agreement has been duly executed and delivered by the Stockholder and constitutes a legal, valid and binding obligation of the Stockholder, enforceable against the Stockholder in accordance with its terms.

8.4.    Conflicts. The execution and delivery of this Agreement by the Stockholder, and the performance of his obligations hereunder do not conflict with, violate, contravene, breach or result in a default under (with or without the giving of notice or the lapse of time), any contract to which the Stockholder is a party or by which any of their respective properties or assets, or the Shares, are bound or result in the creation or imposition of any Liens.

8.5.    Governmental Authorization. Except for the approval of DHSS, the execution, delivery and performance by the Stockholder of this Agreement and the consummation of the transactions contemplated by this Agreement require no action by or in respect of, or filing with, any governmental or regulatory authority.

8.6.    Litigation. There is no action, suit, investigation or proceeding or any basis therefor pending or, to the knowledge of the Stockholder, threatened against or affecting the Stockholder or its properties or assets, or the Shares, or which in any manner could reasonably be expected to prevent, enjoin, alter or materially delay the transactions contemplated by this Agreement.

9.    Indemnification. The Stockholder hereby agrees to indemnify and hold Buyer harmless from and against all losses, claims, costs, expenses, liabilities, fines, penalties, damages and fees arising from: (i) the breach of any representation and warranty by the Stockholder; and (ii) the breach of any covenant contained herein.

10.    Miscellaneous.

10.1.    Further Actions. Subject to the terms and conditions of this Agreement, each party shall execute and deliver such certificates and other documents and take such actions as may reasonably be requested by any other party in order to effect the transactions contemplated by this Agreement.

10.2.    Notices. All notices, requests, demands, waivers and other communications required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been duly given if (a) delivered personally, (b) sent by next-day or overnight mail or delivery or (c) sent via email, as follows:

if to Buyer:

Botannis Labs, Inc.
1770 Blake St.
Denver, CO 80202
Attn: Matthew Wolf
matt@wolfcap.com

4

with a copy (which shall not constitute notice) to:

Vicente Sederberg LLP
455 Sherman St.
Suite 390
Denver, CO 80203
Attn:  Charles Alovisetti
charlie@vicentesederberg.com

if to the Stockholder, to the address set forth on the signature page hereto or, in each case, at such other address as may be specified in writing to the other parties hereto.

All such notices, requests, demands, waivers and other communications shall be deemed to have been received (i) if by personal delivery, on the day of such delivery, (ii) if by next-day or overnight mail or delivery, on the day actually delivered or (iii) if by email, on the day on which such email was sent with confirmation of transmittal or receipt.

10.3.   Assignment; Successors.   This Agreement shall not be assignable by the Stockholder except in connection with an assignment of the Shares to the same person or entity to whom this Agreement is assigned, in which case the Stockholder must assign this agreement therewith.  Buyer may assign its rights under this Agreement. This Agreement shall inure to the benefit of, and be binding on and enforceable against, the parties and their respective heirs, successors and permitted assigns.

10.4.   Entire Agreement.   This Agreement (including the Exhibits and other documents referred to herein or delivered hereunder) constitutes the entire agreement with respect to the subject matter hereof and supersedes all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof.

10.5.   Headings.   The headings contained in this Agreement are for purposes of convenience only and shall not affect the meaning or interpretation of this Agreement.

10.6.   Counterparts.   This Agreement may be executed in several counterparts, any one of which need not contain the signatures of more than one party, but all such counterparts taken together shall constitute one and the same instrument. This Agreement, the other agreements and documents required to consummate the transactions contemplated by this Agreement (the "Transaction Documents"), and any amendments hereto or thereto, to the extent delivered by means of a facsimile machine, electronic mail, Adobe PDF format or other electronic means, shall be treated in all manner and respects as an original agreement or instrument and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

10.7.   Amendments and Waivers.   Any term of this Agreement may be amended, terminated or waived only with the written consent of the parties hereto.  No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving.  No waiver by any party shall operate or be construed as a waiver in

respect of any failure, breach, or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver.

10.8.   <u>Governing Law</u>.

(a)   This Agreement and the legal relations among the parties hereto shall be governed by and construed in accordance with the laws of the State of Missouri, without giving effect to any law or rule that would cause the laws of any jurisdiction other than the State of Missouri to be applied.

(b)   Each party expressly waives any defense against the enforcement of this Agreement or the Transaction Documents or any dispute or claim arising hereunder or thereunder which it may have by reason of (i) illegality under any federal law, or (ii) this Agreement being contrary to public policy, and each party hereby agrees not to raise any such defense or any similar defense with respect to any dispute, claim or judicial proceeding arising out of this Agreement or the Transaction Documents.

10.9.   <u>Waiver of Jury Trial</u>.   EACH PARTY HERETO ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY WHICH MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES, AND THEREFORE IT HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED UNDER APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

10.10.   <u>Dispute Resolution</u>.   This Agreement and any dispute, claim, or controversy arising out of, connected with, or relating to this Agreement ("<u>Dispute</u>") shall be governed by and construed in accordance with the laws of the State of Missouri, without regard to conflict of law principles that would result in the application of any law other than the laws of the State of Missouri.   All Disputes shall, to the extent possible, be settled amicably by prompt good faith negotiations between the representatives of the parties hereto.   In the event the parties cannot resolve a Dispute within thirty (30) days of the commencement of such discussions, such Dispute shall be resolved by finally binding arbitration as provided herein.   Arbitration shall be conducted under, and governed by, the then current Commercial Rules of Arbitration of the American Arbitration Association (the "<u>Arbitration Rules</u>").   All arbitration hearings shall be conducted in St. Louis, Missouri.   Each Shareholder and the Company hereby agree that a judgment upon an arbitration award may be entered in any court having appropriate jurisdiction.   Each Shareholder and the Company hereby irrevocably consent to the exclusive personal jurisdiction of, and venue in, the state courts located in St. Louis, Missouri.   The arbitration shall be conducted by a panel of three (3) persons selected as follows: each party involved in the Dispute shall select one (1) person to act as arbitrator; and such selected arbitrators shall select another arbitrator within thirty (30) days of their appointment; all in accordance with the Arbitration Rules.   Each party to the Dispute shall bear its own costs and expenses and attorneys' fees, and an equal share of the arbitrators' fees and any administrative fees of arbitration.

10.11.   <u>Specific Performance</u>.   The parties acknowledge and agree irreparable damage

would occur in the event that any of the provisions of this Agreement were not performed in accordance with its specific terms or were otherwise breached.  Accordingly, the parties agree that, in addition to any other right or remedy to which a party may be entitled at law or in equity, they each shall be entitled to enforce any provision of this Agreement by a decree of specific performance and to obtain temporary, preliminary and permanent injunctive relief.

      10.12.  Regulatory Approval Required; Regulatory Cooperation Required.  The parties acknowledge and agree that this Agreement and the transactions contemplated hereby are contingent on the parties obtaining approval of this Agreement and such contemplated transactions by the DHSS.  Neither party makes any representation or warranty that such approval will be obtained or will be able to be obtained.  The parties agree to cooperate in good faith as may be required to obtain approval of this Agreement from DHSS, including but not limited to provision and execution of any necessary documents, or amending this Agreement to conform to the requirements of DHSS, if necessary.

      10.13.  Advisement of Counsel.  The production, sale and distribution of cannabis, including aiding and abetting the same, is illegal under U.S. federal law.  Neither party, nor attorneys for either party, have made any representations to the contrary.

*[Signature Page Follows]*

7

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the day and year first above written.

STOCKHOLDER:

Daniel Altmann

_____

Address:    6450 Oakland Ave.
            Apt. 2F
            St. Louis, MO 63139
Email:      dna661@gmail.com

BUYER:

Botannis Labs, Inc.

_____

By:    Matthew Wolf
Title: Secretary and Treasurer

**Exhibit A**

**Exercise Price**

Following the exercise of the Purchase Option, in exchange for such number of Shares as Buyer determines to purchase at such time, Buyer shall convey to the Stockholder the greater of:

- Double (2X) Last Twelve Months' Earnings Before Interest, Taxes, Depreciation and Amortization, minus any liabilities of the company, plus any assets of the company multiplied by a fraction, the numerator of which is the number of Shares, and the denominator of which is the number of shares of Common Stock or any other class of stock in the Company then issued and outstanding; or

- The lesser of:

  o TWO HUNDRED THOUSAND UNITED STATES DOLLARS ($200,000.00 USD); or

  o For any Shares acquired for good and valuable consideration after the Closing pursuant to a financing event of the Company or otherwise, and not as a result of any stock split, combination or issuance as dividend, their initial purchase price.

Multiplied in each case by a fraction, the numerator of which is the number of Shares that Buyer elects to purchase, and the denominator of which is the number of Shares held by the Stockholder as of such date.

**<u>Exhibit B</u>**

**Assignment**

(see attached)

# AMENDED AND RESTATED BY-LAWS

### of

## BOTANNIS LABS MO. CORP.

### (the "Corporation")

### 1. Stockholders

(a) <u>Annual Meeting</u>. The annual meeting of stockholders shall be held for the election of directors each year at such place, date and time as shall be designated by the Board of Directors. Any other proper business may be transacted at the annual meeting. If no date for the annual meeting is established or said meeting is not held on the date established as provided above, a special meeting in lieu thereof may be held or there may be action by written consent of the stockholders on matters to be voted on at the annual meeting, and such special meeting or written consent shall have for the purposes of these By-laws or otherwise all the force and effect of an annual meeting.

(b) <u>Special Meetings</u>. Special meetings of stockholders may be called by the Chief Executive Officer, if one is elected, or, if there is no Chief Executive Officer, a President, or by the Board of Directors, but such special meetings may not be called by any other person or persons. The call for the meeting shall state the place, date, hour and purposes of the meeting. Only the purposes specified in the notice of special meeting shall be considered or dealt with at such special meeting.

(c) <u>Notice of Meetings</u>. Whenever stockholders are required or permitted to take any action at a meeting, a notice stating the place, date and hour of the meeting, the means of remote communications, if any, by which stockholders and proxyholders may be deemed to be present and vote at such meeting, and, in the case of a special meeting, the purpose or purposes of the meeting, shall be given by the Secretary (or other person authorized by these By-laws or by law) not less than ten (10) nor more than seventy (70) days before the meeting to each stockholder entitled to vote thereat and to each stockholder who, under the Articles of Incorporation or under these By-laws is entitled to such notice. If mailed, notice is given when deposited in the mail, postage prepaid, directed to such stockholder at such stockholder's address as it appears in the records of the Corporation. Without limiting the manner by which notice otherwise may be effectively given to stockholders, any notice to stockholders may be given by electronic transmission as provided in Section 351 of the Revised Statues of Missouri (the "General and Business Corporation Law of Missouri" or "<u>GBCLM</u>").

If a meeting is adjourned to another time or place, notice need not be given of the adjourned meeting if the time and place, if any, and the means of remote communications, if any, by which stockholders and proxyholders may be deemed to be present in person and vote at such adjourned meeting are announced at the meeting at which the adjournment is taken, except that if the adjournment is for more than ninety (90) days, or if after the adjournment a new record date is fixed for the adjourned meeting, notice of the date and time of the adjourned meeting shall be

given to each stockholder of record entitled to vote at the meeting.

      (d)    Quorum.  The holders of a majority in interest of all stock issued, outstanding and entitled to vote at a meeting, present in person or represented by proxy, shall constitute a quorum. Any meeting may be adjourned from time to time by a majority of the votes properly cast upon the question, whether or not a quorum is present. The stockholders present at a duly constituted meeting may continue to transact business until adjournment notwithstanding the withdrawal of enough stockholders to reduce the voting shares below a quorum.

      (e)    Voting and Proxies.  Except as otherwise provided by the Articles of Incorporation or by law, each outstanding share entitled to vote shall be entitled to one (1) vote on each matter submitted to a vote at a meeting of shareholders. Each stockholder entitled to vote at a meeting of stockholders or to express consent or dissent to corporate action in writing without a meeting may authorize another person or persons to act for such stockholder by either written proxy or by a transmission permitted by RSMO Section 351.245.5, but no proxy shall be voted or acted upon after eleven (11) months from its date, unless the proxy expressly provides for a longer period or is irrevocable, in accord with RSMO 351.245.4. Proxies shall be filed with the Secretary of the meeting, or of any adjournment thereof. Except as otherwise limited therein, proxies shall entitle the persons authorized thereby to vote at any adjournment of such meeting.

      (f)    Action at Meeting.  When a quorum is present, any matter before the meeting shall be decided by vote of the holders of a majority of the shares of stock voting on such matter except where a larger vote is required by law, by the Articles of Incorporation or by these By-laws. Any election of directors by stockholders shall be determined by a plurality of the votes cast, except where a larger vote is required by law, by the Articles of Incorporation or by these By-laws. The Corporation shall not directly or indirectly vote any share of its own stock; provided, however, that the Corporation may vote shares which it holds in a fiduciary capacity to the extent permitted by law.

      (g)    Presiding Officer.  Meetings of stockholders shall be presided over by the Chairman of the Board, if one is elected, or in his or her absence, the Vice Chairman of the Board, if one is elected, or if neither is elected or in their absence, a President. The Board of Directors shall have the authority to appoint a temporary presiding officer to serve at any meeting of the stockholders if the Chairman of the Board, the Vice Chairman of the Board or a President, if any, is unable to do so for any reason.

      (h)    Conduct of Meetings.  The Board of Directors may adopt by resolution such rules and regulations for the conduct of the meeting of stockholders as it shall deem appropriate. Except to the extent inconsistent with such rules and regulations as adopted by the Board of Directors, the presiding officer of any meeting of stockholders shall have the right and authority to prescribe such rules, regulations and procedures and to do all such acts as, in the judgment of such chairman, are appropriate for the proper conduct of the meeting. Such rules, regulations or procedures, whether adopted by the Board of Directors or prescribed by the presiding officer of the meeting, may include, without limitation, the following: (i) the establishment of an agenda or order of business for the meeting; (ii) rules and procedures for maintaining order at the meeting and the safety of those present; (iii) limitations on attendance at or participation in the meeting to stockholders of record of the Corporation, their duly authorized and constituted proxies or such

other persons as the chairman of the meeting shall determine; (iv) restrictions on entry to the meeting after the time fixed for the commencement thereof; and (v) limitations on the time allotted to questions or comments by participants.  Unless and to the extent determined by the Board of Directors or the presiding officer of the meeting, meetings of stockholders shall not be required to be held in accordance with the rules of parliamentary procedure.

(i)     Action without a Meeting.  Unless otherwise provided in the Articles of Incorporation, any action required or permitted by law to be taken at any annual or special meeting of stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by all shareholders entitled to vote on the actions to be taken and shall be delivered to the Corporation by delivery to its registered office, by hand or by certified mail, return receipt requested, or to the Corporation's principal place of business or to the officer of the Corporation having custody of the minute book.

(j)     Stockholder Lists.  The officer who has charge of the stock ledger of the Corporation shall prepare and make available for inspection, beginning the earlier of ten (10) days before every meeting of stockholders, a complete list of the stockholders entitled to vote at the meeting, arranged by voting groups and within each voting group by class or series of shares, in alphabetical order within each class or series, and showing the address of each stockholder and the number of shares of each class or series registered in the name of each stockholder.  Nothing contained in this Section 1(j) shall require the Corporation to include electronic mail addresses or other electronic contact information on such list.  Such list shall be open to the examination of any stockholder for a period of at least ten (10) days prior to the meeting in the manner provided by law.  The list shall also be produced and kept at the time and place of the meeting and shall be subject to the inspection of any shareholder during the whole meeting as provided by law.

2.      **Directors**

(a)     Powers.  The business of the Corporation shall be managed by or under the direction of a Board of Directors who may exercise all the powers of the Corporation except as otherwise provided by law, by the Articles of Incorporation or by these By-laws.  In the event of a vacancy in the Board of Directors, the remaining directors, except as otherwise provided by law, may exercise the powers of the full Board until the vacancy is filled.

(b)     Number and Qualification.  Unless otherwise provided in the Articles of Incorporation or in these By-laws, the number of directors which shall constitute the whole board shall be determined from time to time by resolution of the Board of Directors, but in no event shall there be fewer than one (1) Director. All Directors shall be individuals who are twenty-one (21) years of age or older. Directors need not, but may, be stockholders.

(c)     Vacancies; Reduction of Board.  A majority of the directors then in office, although less than a quorum, or a sole remaining Director, may fill vacancies in the Board of Directors occurring for any reason and newly created directorships resulting from any increase in the authorized number of directors until the next election of directors by the shareholders of the corporation.  In lieu of filling any vacancy, the Board of Directors may reduce the number of directors.

3

(d)     Tenure.     Except as otherwise provided by law, by the Articles of Incorporation or by these By-laws, the terms of the initial directors expire on the first stockholders' meeting at which directors are elected. The terms of all other directors expire on the next annual stockholders' meeting following their election. All directors shall hold office until their successors are elected and qualified or until their earlier resignation or removal.  Any director may resign at any time upon notice given in writing or by electronic transmission to the Corporation.  Such resignation shall be effective upon receipt unless it is specified to be effective at some other time or upon the happening of some other event.

(e)     Removal.  To the extent permitted by law, a director may be removed from office for cause or without cause at a meeting of the stockholders, by vote of the holders of a seventy-five percent (75%) majority of the shares of stock entitled to vote in the election of directors.

(f)     Meetings.  Regular meetings of the Board of Directors may be held without notice at such time, date and place as the Board of Directors may from time to time determine. Special meetings of the Board of Directors may be called, orally or in writing, by the Chief Executive Officer, if one is elected, or, if there is no Chief Executive Officer, the President, or by any Director, designating the time, date and place thereof.  Directors may participate in meetings of the Board of Directors by means of conference telephone or other communications equipment by means of which all directors participating in the meeting can hear each other, and participation in a meeting in accordance herewith shall constitute presence in person at such meeting.

(g)     Notice of Meetings.  Notice of the time, date and place of all special meetings of the Board of Directors shall be given to each director by the Secretary, or Assistant Secretary, or in case of the death, absence, incapacity or refusal of such persons, by the officer or one of the directors calling the meeting.  Notice shall be given to each director in person, by telephone, or by facsimile, electronic mail or other form of electronic communications, sent to such director's business or home address at least twenty-four (24) hours in advance of the meeting, or by written notice mailed to such director's business or home address at least forty-eight (48) hours in advance of the meeting.

(h)     Quorum.  At any meeting of the Board of Directors, a majority of the total number of directors in office immediately before the meeting begins shall constitute a quorum for the transaction of business. Less than a quorum may adjourn any meeting from time to time and the meeting may be held as adjourned without further notice.

(i)     Action at Meeting.  At any meeting of the Board of Directors at which a quorum is present, unless otherwise provided in the following sentence, a majority of the directors present may take any action on behalf of the Board of Directors, unless a larger number is required by law, by the Articles of Incorporation or by these By-laws.  So long as there are two (2) or fewer Directors, any action to be taken by the Board of Directors shall require the approval of all Directors.

(j)     Action by Consent.  Any action required or permitted to be taken at any meeting of the Board of Directors may be taken without a meeting if, setting forth the action so taken, all members of the Board of Directors consent thereto in writing or by electronic

4

transmission, and the writing or writings or electronic transmission or transmissions are filed by the secretary with the records of the meetings of the Board of Directors. Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

(k)     Committees. The Board of Directors may, if there is more than one (1) director, by resolution passed by a majority of the whole Board of Directors, establish one (1) or more committees, each committee to consist of two (2) or more directors. The Board of Directors may designate one (1) or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee. In the absence or disqualification of a member of a committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not such member or members constitute a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in the place of any such absent or disqualified member.

Any such committee, to the extent permitted by law and to the extent provided in the resolution of the Board of Directors, shall have and may exercise all the powers and authority of the Board of Directors in the management of the business and affairs of the Corporation, and may authorize the seal of the Corporation to be affixed to all papers which may require it; but no such committee shall have the power or authority in reference to the following: (i) approving or adopting, or recommending to the stockholders, any action or matter expressly required by the General and Business Corporation Law of Missouri to be submitted to stockholders for approval or (ii) adopting, amending or repealing any provision of these By-laws.

Except as the Board of Directors may otherwise determine, any such committee may make rules for the conduct of its business, but in the absence of such rules its business shall be conducted so far as possible in the same manner as is provided in these By-laws for the Board of Directors. All members of such committees shall hold their committee offices at the pleasure of the Board of Directors, and the Board may abolish any committee at any time.

3.     **Officers**

(a)     Enumeration. The officers of the Corporation shall consist of one (1) or more Presidents (who, if there is more than one, shall be referred to as Co-Presidents), a Treasurer, a Secretary, and such other officers, including, without limitation, a Chief Executive Officer and one or more Vice Presidents (including Executive Vice Presidents or Senior Vice Presidents), Assistant Vice Presidents, Assistant Treasurers and Assistant Secretaries, as the Board of Directors may determine. The Board of Directors may elect from among its members a Chairman of the Board and a Vice Chairman of the Board.

(b)     Election. The Presidents, Treasurer and Secretary shall be elected annually by the Board of Directors at their first meeting following the annual meeting of stockholders. Other officers may be chosen by the Board of Directors at such meeting or at any other meeting.

(c)     Qualification. No officer need be a stockholder or Director. Any two (2) or more offices may be held by the same person. Any officer may be required by the Board of

5

Directors to give bond for the faithful performance of such officer's duties in such amount and with such sureties as the Board of Directors may determine.

(d) Tenure. Except as otherwise provided by the Articles of Incorporation or by resolution of the Board of Directors, each of the officers of the Corporation shall hold office until such officer's successor is elected and qualified or until such officer's earlier resignation or removal. Any officer may resign by delivering his or her written resignation to the Corporation, and such resignation shall be effective upon receipt unless it is specified to be effective at some other time or upon the happening of some other event.

(e) Removal. The Board of Directors may remove any officer with or without cause by a vote of a majority of the directors then in office provided that such removal is in the best interest of the corporation, as judged by the Board of Directors and such removal shall be without prejudice to the contract rights, if any, of the officer so removed.

(f) Vacancies. Any vacancy in any office may be filled for the unexpired portion of the term by the Board of Directors.

(g) Chairman of the Board and Vice Chairman. Unless otherwise provided by the Board of Directors, the Chairman of the Board of Directors, if one is elected, shall preside, when present, at all meetings of the stockholders and the Board of Directors. The Chairman of the Board shall have such other powers and shall perform such duties as the Board of Directors may from time to time designate.

Unless otherwise provided by the Board of Directors, in the absence of the Chairman of the Board, the Vice Chairman of the Board, if one is elected, shall preside, when present, at all meetings of the stockholders and the Board of Directors. The Vice Chairman of the Board shall have such other powers and shall perform such duties as the Board of Directors may from time to time designate.

(h) Chief Executive Officer. The Chief Executive Officer, if one is elected, shall have such powers and shall perform such duties as the Board of Directors may from time to time designate.

(i) Presidents. Subject to the direction of the Board of Directors, the President shall have general supervision and control of the Corporation's business. If there is no Chairman of the Board or Vice Chairman of the Board, a President shall preside, when present, at all meetings of stockholders and the Board of Directors. The President shall have such other powers and shall perform such duties as the Board of Directors may from time to time designate.

(j) Vice Presidents and Assistant Vice Presidents. Any Vice President (including any Executive Vice President or Senior Vice President) and any Assistant Vice President shall have such powers and shall perform such duties as the Board of Directors may from time to time designate.

(k) Treasurer and Assistant Treasurers. The Treasurer shall, subject to the direction of the Board of Directors, have general charge of the financial affairs of the Corporation and shall cause to be kept accurate books of account. The Treasurer shall have custody of all

funds, securities, and valuable documents of the Corporation, except as the Board of Directors may otherwise provide. The Treasurer shall have such other powers and shall perform such duties as the Board of Directors may from time to time designate.

Any Assistant Treasurer shall have such powers and perform such duties as the Board of Directors may from time to time designate.

(l)     Secretary and Assistant Secretaries.  The Secretary shall record the proceedings of all meetings of the stockholders and the Board of Directors (including committees of the Board) in books kept for that purpose. In the absence of the Secretary from any such meeting an Assistant Secretary, or if such person is absent, a temporary secretary chosen at the meeting, shall record the proceedings thereof. The Secretary shall have charge of the stock ledger (which may, however, be kept by any transfer or other agent of the Corporation) and shall have such other duties and powers as may be designated from time to time by the Board of Directors.

Any Assistant Secretary shall have such powers and perform such duties as the Board of Directors may from time to time designate.

(m)     Other Powers and Duties.  Subject to these By-laws, each officer of the Corporation shall have in addition to the duties and powers specifically set forth in these By-laws, such duties and powers as are customarily incident to such officer's office, and such duties and powers as may be designated from time to time by the Board of Directors.

4.     **Capital Stock**

(a)     Certificates of Stock.  Shares of stock in the corporation shall be uncertificated. The Corporation shall be permitted to issue fractional shares.

(b)     Transfers.  Subject to any restrictions on transfer, shares of stock may be transferred on the books of the Corporation by notice to the Corporation or its transfer agent of such transfer, accompanied by documentation evidencing such transfer and with such proof of the authenticity of signature as the Corporation may reasonably require.

(c)     Record Holders.  Except as may otherwise be required by law, the Corporation shall be entitled to treat the record holder of stock as shown on its books as the owner of such stock for all purposes, including the payment of dividends and the right to vote with respect thereto, regardless of any transfer, pledge or other disposition of such stock, until the shares have been transferred on the books of the Corporation in accordance with the requirements of these By-laws.

It shall be the duty of each stockholder to notify the Corporation of such stockholder's post office address.

(d)     Record Date.  In order that the Corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, or to consent to corporate action in writing without a meeting, or entitled to receive payment of any dividend or other distribution or allotment of any rights, or entitled to exercise any rights in respect of any change, conversion or exchange of stock or for the purpose of any other lawful action, the

Board of Directors may fix, in advance, a record date, which shall not precede the date on which it is established, and which shall not be more than seventy (70) nor less than ten (10) days before the date of such meeting, more than ten (10) days after the date on which the record date for stockholder consent without a meeting is established, nor more than seventy (70) days prior to any other action. In such case only stockholders of record on such record date shall be so entitled notwithstanding any transfer of stock on the books of the Corporation after the record date. If the Board of Directors do not set a record date, only shareholders who are shareholders of record at the close of business on the twentieth (20th) day preceding the date of the meeting shall be entitled to notice of, and to vote at, the meeting and any adjournment or postponement of the meeting.

If no record date is fixed, (i) the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the twentieth (20th) day preceding the day of the meeting, or, if notice is waived via written waivers of notice so signed and delivered to the corporation, at the close of business on the day next preceding the day on which the meeting is held, by all of shareholders of record at the time the meeting is convened, only the shareholders who are shareholders of record at the time the meeting is convened shall be entitled to vote at the meeting, and any adjournment or postponement of the meeting.

At the close of business on the day next preceding the day on which the meeting is held; (ii) the record date for determining stockholders entitled to consent to corporate action in writing without a meeting, when no prior action by the Board of Directors is necessary, shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the Corporation by delivery to its registered office in this state, to its principal place of business, or to an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded; and (iii) the record date for determining stockholders for any other purpose shall be at the close of business on the day on which the Board of Directors adopts the resolution relating thereto.

**5.** **Indemnification**

(a)   Definitions.  For purposes of this Section 5:

(i)   "Corporate Status" describes the status of a person who is serving or has served (A) as a Director of the Corporation, (B) as an Officer of the Corporation, (C) as a Non-Officer Employee of the Corporation, or (D) as a director, partner, trustee, officer, employee or agent of any other corporation, partnership, limited liability company, joint venture, trust, employee benefit plan, foundation, association, organization or other legal entity for which such person is or was serving at the request of the Corporation. For purposes of this Section 5(a)(i), a Director, Officer or Non-Officer Employee of the Corporation who is serving or has served as a director, partner, trustee, officer, employee or agent of a Subsidiary shall be deemed to be serving at the request of the Corporation. Notwithstanding the foregoing, "Corporate Status" shall not include the status of a person who is serving or has served as a director, officer, employee or agent of a constituent corporation absorbed in a merger or consolidation transaction with the Corporation with respect to such person's activities prior to said transaction, unless specifically authorized by the Board of Directors or the stockholders of the Corporation;

8

(ii)   "Director" means any person who serves or has served the Corporation as a director on the Board of Directors of the Corporation;

(iii)   "Disinterested Director" means, with respect to each Proceeding in respect of which indemnification is sought hereunder, a Director of the Corporation who is not and was not a party to such Proceeding;

(iv)   "Expenses" means all reasonable attorneys' fees, retainers, court costs, transcript costs, fees of expert witnesses, private investigators and professional advisors (including, without limitation, accountants and investment bankers), travel expenses, duplicating costs, printing and binding costs, costs of preparation of demonstrative evidence and other courtroom presentation aids and devices, costs incurred in connection with document review, organization, imaging and computerization, telephone charges, postage, delivery service fees, and all other disbursements, costs or expenses of the type customarily incurred in connection with prosecuting, defending, preparing to prosecute or defend, investigating, being or preparing to be a witness in, settling or otherwise participating in, a Proceeding;

(v)   "Liabilities" means judgments, damages, liabilities, losses, penalties, excise taxes, fines and amounts paid in settlement;

(vi)   "Non-Officer Employee" means any person who serves or has served as an employee or agent of the Corporation, but who is not or was not a Director or Officer;

(vii)   "Officer" means any person who serves or has served the Corporation as an officer of the Corporation appointed by the Board of Directors of the Corporation;

(viii)   "Proceeding" means any threatened, pending or completed action, suit, arbitration, alternate dispute resolution mechanism, inquiry, investigation, administrative hearing or other proceeding, whether civil, criminal, administrative, arbitrative or investigative; and

(ix)   "Subsidiary" shall mean any corporation, partnership, limited liability company, joint venture, trust or other entity of which the Corporation owns (either directly or through or together with another Subsidiary of the Corporation) either (i) a general partner, managing member or other similar interest or (ii) (A) fifty percent (50%) or more of the voting power of the voting capital equity interests of such corporation, partnership, limited liability company, joint venture or other entity, or (B) fifty percent (50%) or more of the outstanding voting capital stock or other voting equity interests of such corporation, partnership, limited liability company, joint venture or other entity.

(b)   <u>Indemnification of Directors and Officers</u>.  Subject to the operation of <u>Section 5(d)</u> of these By-laws, each Director and Officer shall be indemnified and held harmless by the Corporation to the fullest extent authorized by section 351 of the Revised Statutes of Missouri, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Corporation to provide broader indemnification

9

rights than such law permitted the Corporation to provide prior to such amendment), and to the extent authorized in subsections (i) through (v) of this Section 5(b).

(i)     Actions, Suits and Proceedings Other than By or In the Right of the Corporation. Each Director and Officer shall be indemnified and held harmless by the Corporation against any and all Expenses and Liabilities that are incurred or paid by such Director or Officer or on such Director's or Officer's behalf in connection with any Proceeding or any claim, issue or matter therein (other than an action by or in the right of the Corporation), which such Director or Officer is, or is threatened to be made, a party to or participant in by reason of such Director's or Officer's Corporate Status, if such Director or Officer acted in good faith and in a manner such Director or Officer reasonably believed to be in or not opposed to the best interests of the Corporation and, with respect to any criminal proceeding, had no reasonable cause to believe his or her conduct was unlawful.

(ii)     Actions, Suits and Proceedings By or In the Right of the Corporation. Each Director and Officer shall be indemnified and held harmless by the Corporation against any and all Expenses that are incurred by such Director or Officer or on such Director's or Officer's behalf in connection with any Proceeding or any claim, issue or matter therein by or in the right of the Corporation, which such Director or Officer is, or is threatened to be made, a party to or participant in by reason of such Director's or Officer's Corporate Status, if such Director or Officer acted in good faith and in a manner such Director or Officer reasonably believed to be in or not opposed to the best interests of the Corporation; provided, however, that no indemnification shall be made under this Section 5(b)(ii) in respect of any claim, issue or matter as to which such Director or Officer shall have been finally adjudged to be liable to the Corporation for negligence or misconduct in the performance of his or her duty to the Corporation by a court of competent jurisdiction, unless, and only to the extent that, the court in which such Proceeding was brought shall determine upon application that, despite adjudication of liability, but in view of all the circumstances of the case, such Director or Officer is fairly and reasonably entitled to indemnification for such Expenses that such court deems proper.

(iii)     Survival of Rights. The rights of indemnification provided by this Section 5(b) shall continue as to a Director or Officer after he or she has ceased to be a Director or Officer and shall inure to the benefit of his or her heirs, executors, administrators and personal representatives provided further that no such indemnity shall indemnify any person from or on account of such person's conduct which was finally adjudged to have been knowingly fraudulent, deliberately dishonest or willful misconduct.

(iv)     Actions by Directors or Officers. Notwithstanding the foregoing, the Corporation shall indemnify any Director or Officer seeking indemnification in connection with a Proceeding initiated by such Director or Officer only if such Proceeding (including any parts of such Proceeding not initiated by such Director or Officer) was authorized in advance by the Board of Directors of the Corporation, unless such Proceeding was brought to enforce such Officer's or Director's rights to indemnification or, in the case of Directors, advancement of Expenses under these By-laws in accordance with the provisions set forth herein.

(v)     Success on the Merits. Notwithstanding the foregoing, the Corporation shall indemnify any Director or Officer who has been successful on the merits or otherwise in any Proceeding, such Director or Officer shall be indemnified against expenses, including attorneys' fees, actually and reasonably incurred by him in connection with the Proceeding.

(c)     Indemnification of Non-Officer Employees. Subject to the operation of Section 5(d) of these By-laws, each Non-Officer Employee may, in the discretion of the Board of Directors of the Corporation, be indemnified by the Corporation to the fullest extent authorized by the GBCLM, as the same exists or may hereafter be amended, against any or all Expenses and Liabilities that are incurred by such Non-Officer Employee or on such Non-Officer Employee's behalf in connection with any threatened, pending or completed Proceeding, or any claim, issue or matter therein, which such Non-Officer Employee is, or is threatened to be made, a party to or participant in by reason of such Non-Officer Employee's Corporate Status, if such Non-Officer Employee acted in good faith and in a manner such Non-Officer Employee reasonably believed to be in or not opposed to the best interests of the Corporation and, with respect to any criminal proceeding, had no reasonable cause to believe his or her conduct was unlawful. The rights of indemnification provided by this Section 5(c) shall exist as to a Non-Officer Employee after he or she has ceased to be a Non-Officer Employee and shall inure to the benefit of his or her heirs, personal representatives, executors and administrators. Notwithstanding the foregoing, the Corporation may indemnify any Non-Officer Employee seeking indemnification in connection with a Proceeding initiated by such Non-Officer Employee only if such Proceeding was authorized in advance by the Board of Directors of the Corporation.

(d)     Determination. Unless ordered by a court, no indemnification shall be provided pursuant to this Section 5 to a Director, to an Officer or to a Non-Officer Employee unless a determination shall have been made that such person acted in good faith and in a manner such person reasonably believed to be in or not opposed to the best interests of the Corporation and, with respect to any criminal Proceeding, such person had no reasonable cause to believe his or her conduct was unlawful. Such determination shall be made by (i) a majority vote of the Disinterested Directors, even though less than a quorum of the Board of Directors; (ii) a committee comprised of Disinterested Directors, such committee having been designated by a majority vote of the Disinterested Directors (even though less than a quorum); (iii) if there are no such Disinterested Directors, or if a majority of Disinterested Directors so directs, by independent legal counsel in a written opinion; or (iv) by the stockholders of the Corporation.

(e)     Advancement of Expenses to Directors Prior to Final Disposition.

(i)     The Corporation shall advance all Expenses incurred by or on behalf of any Director in connection with any Proceeding in which such Director is involved by reason of such Director's Corporate Status within thirty (30) days after the receipt by the Corporation of a written statement from such Director requesting such advance or advances from time to time, whether prior to or after final disposition of such Proceeding. Such statement or statements shall reasonably evidence the Expenses incurred by such Director and shall be preceded or accompanied by an undertaking by or on behalf of such Director to repay any Expenses so advanced if it shall ultimately be determined that such Director is not entitled to be indemnified against such Expenses. Notwithstanding the foregoing,

the Corporation shall advance all Expenses incurred by or on behalf of any Director seeking advancement of expenses hereunder in connection with a Proceeding initiated by such Director only if such Proceeding (including any parts of such Proceeding not initiated by such Director) was (A) authorized by the Board of Directors of the Corporation, or (B) brought to enforce such Director's rights to indemnification or advancement of Expenses under these By-laws.

(ii)     If a claim for advancement of Expenses hereunder by a Director is not paid in full by the Corporation within thirty (30) days after receipt by the Corporation of documentation of Expenses and the required undertaking, such Director may at any time thereafter bring suit against the Corporation to recover the unpaid amount of the claim and if successful in whole or in part, such Director shall also be entitled to be paid the expenses of prosecuting such claim. The failure of the Corporation (including its Board of Directors or any committee thereof, independent legal counsel, or stockholders) to make a determination concerning the permissibility of such advancement of Expenses under this Section 5 shall not be a defense to an action brought by a Director for recovery of the unpaid amount of an advancement claim and shall not create a presumption that such advancement is not permissible. The burden of proving that a Director is not entitled to an advancement of expenses shall be on the Corporation.

(iii)     In any suit brought by the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the Corporation shall be entitled to recover such expenses upon a final adjudication that the Director has not met any applicable standard for indemnification set forth in the GBCLM.

(f)     Advancement of Expenses to Officers and Non-Officer Employees Prior to Final Disposition.

(i)     The Corporation may, at the discretion of the Board of Directors of the Corporation, advance any or all Expenses incurred by or on behalf of any Officer or any Non-Officer Employee in connection with any Proceeding in which such person is involved by reason of his or her Corporate Status as an Officer or Non-Officer Employee upon the receipt by the Corporation of a statement or statements from such Officer or Non-Officer Employee requesting such advance or advances from time to time, whether prior to or after final disposition of such Proceeding. Such statement or statements shall reasonably evidence the Expenses incurred by such Officer or Non-Officer Employee and shall be preceded or accompanied by an undertaking by or on behalf of such person to repay any Expenses so advanced if it shall ultimately be determined that such Officer or Non-Officer Employee is not entitled to be indemnified against such Expenses.

(ii)     In any suit brought by the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the Corporation shall be entitled to recover such expenses upon a final adjudication that the Officer or Non-Officer Employee has not met any applicable standard for indemnification set forth in the GBCLM.

(g)     Contractual Nature of Rights.

(i)      The provisions of this Section 5 shall be deemed to be a contract between the Corporation and each Director and Officer entitled to the benefits hereof at any time while this Section 5 is in effect, in consideration of such person's past or current and any future performance of services for the Corporation. Neither amendment, repeal or modification of any provision of this Section 5 nor the adoption of any provision of the Articles of Incorporation inconsistent with this Section 5 shall eliminate or reduce any right conferred by this Section 5 in respect of any act or omission occurring, or any cause of action or claim that accrues or arises or any state of facts existing, at the time of or before such amendment, repeal, modification or adoption of an inconsistent provision (even in the case of a proceeding based on such a state of facts that is commenced after such time), and all rights to indemnification and advancement of Expenses granted herein or arising out of any act or omission shall vest at the time of the act or omission in question, regardless of when or if any proceeding with respect to such act or omission is commenced. The rights to indemnification and to advancement of expenses provided by, or granted pursuant to, this Section 5 shall continue notwithstanding that the person has ceased to be a Director or Officer of the Corporation and shall inure to the benefit of the estate, heirs, executors, administrators, legatees and distributees of such person.

(ii)      If a claim for indemnification hereunder by a Director or Officer is not paid in full by the Corporation within sixty (60) days after receipt by the Corporation of a written claim for indemnification, such Director or Officer may at any time thereafter bring suit against the Corporation to recover the unpaid amount of the claim, and if successful in whole or in part, such Director or Officer shall also be entitled to be paid the expenses of prosecuting such claim. The failure of the Corporation (including its Board of Directors or any committee thereof, independent legal counsel, or stockholders) to make a determination concerning the permissibility of such indemnification under this Section 5 shall not be a defense to an action brought by a Director or Officer for recovery of the unpaid amount of an indemnification claim and shall not create a presumption that such indemnification is not permissible. The burden of proving that a Director or Officer is not entitled to indemnification shall be on the Corporation.

(iii)      In any suit brought by a Director or Officer to enforce a right to indemnification hereunder, it shall be a defense that such Director or Officer has not met any applicable standard for indemnification set forth in the GBCLM.

(h)      Non-Exclusivity of Rights. The rights to indemnification and advancement of Expenses set forth in this Section 5 shall not be exclusive of any other right which any Director, Officer, or Non-Officer Employee may have or hereafter acquire under any statute, provision of the Articles of Incorporation or these By-laws, agreement, vote of stockholders or Disinterested Directors or otherwise.

(i)      Insurance. The Corporation may maintain insurance, at its expense, to protect itself and any Director, Officer or Non-Officer Employee against any liability of any character asserted against or incurred by the Corporation or any such Director, Officer or Non-Officer Employee, or arising out of any such person's Corporate Status, whether or not the Corporation would have the power to indemnify such person against such liability under the GBCLM or the provisions of this Section 5.

13

(j)     Other Indemnification. The Corporation's obligation, if any, to indemnify or provide advancement of Expenses to any person under this Section 5 as a result of such person serving, at the request of the Corporation, as a director, partner, trustee, officer, employee or agent of another corporation, partnership, joint venture, trust, employee benefit plan or other enterprise shall be reduced by any amount such person may collect as indemnification or advancement of Expenses from such other corporation, partnership, joint venture, trust, employee benefit plan or enterprise (the "Primary Indemnitor"). Any indemnification or advancement of Expenses under this Section 5 owed by the Corporation as a result of a person serving, at the request of the Corporation, as a director, partner, trustee, officer, employee or agent of another corporation, partnership, joint venture, trust, employee benefit plan or other enterprise shall only be in excess of, and shall be secondary to, the indemnification or advancement of Expenses available from the applicable Primary Indemnitor(s) and any applicable insurance policies.

**6.     Miscellaneous Provisions**

(a)     Fiscal Year. Except as otherwise determined by the Board of Directors, the fiscal year of the Corporation shall end on December 31 of each year.

(b)     Seal. The Board of Directors shall have power to adopt and alter the seal of the Corporation.

(c)     Execution of Instruments. Subject to any limitations which may be set forth in a resolution of the Board of Directors, all deeds, leases, transfers, contracts, bonds, notes and other obligations to be entered into by the Corporation in the ordinary course of its business without director action may be executed on behalf of the Corporation by, a President, or by any other officer, employee or agent of the Corporation as the Board of Directors may authorize.

(d)     Voting of Securities. Unless the Board of Directors otherwise provides, a President, any Vice President or the Treasurer may waive notice of and act on behalf of this Corporation, or appoint another person or persons to act as proxy or attorney in fact for this Corporation with or without discretionary power and/or power of substitution, at any meeting of stockholders or shareholders of any other corporation or organization, any of whose securities are held by this Corporation.

(e)     Resident Agent. The Board of Directors may appoint a resident agent upon whom legal process may be served in any action or proceeding against the Corporation.

(f)     Corporate Records. The original or attested copies of the Articles of Incorporation, By-laws and records of all meetings of the incorporators, resolutions adopted relating to the characteristics, qualifications, rights, limitations and obligations of stockholders or any class or category of stockholders, minutes of all meetings of Board of Directors and stockholders, records of all actions approved for the past three years, all written communications to all stockholders or any specific class of stockholders generally within the past three years, including financial statements furnished for the past three years under Section 355.846, its most recent corporate registration report in accordance with Section 355.856, appropriate financial statements of all income and expenses and stockholders and the Board of Directors and the stock and transfer records, which shall contain the names of all stockholders, their record addresses and

14

the amount of stock held by each, shall be kept at the principal office of the Corporation, at the office of its counsel, or at an office of its transfer agent.

(g) <u>Articles of Incorporation</u>. All references in these By-laws to the Articles of Incorporation shall be deemed to refer to the Articles of Incorporation of the Corporation, as amended and in effect from time to time.

(h) <u>Amendments</u>. These By-laws may be altered, amended or repealed, and new By-laws may be adopted, by the stockholders holding seventy-five percent (75%) of the issued and outstanding shares of Common Stock, or by the Board of Directors; provided, that (i) the Board of Directors may not alter, amend or repeal any provision of these By-laws which by law, by the Articles of Incorporation or by these By-laws requires action by the stockholders; and (ii) any alteration, amendment or repeal of these By-laws by the Board of Directors and any new By-law adopted by the Board of Directors may be altered, amended or repealed by the vote of the stockholders holding seventy-five percent (75%) of the issued and outstanding shares of Common Stock in the Corporation.

(i) <u>Waiver of Notice</u>. Whenever notice is required to be given under any provision of these By-laws, a written waiver, signed by the person entitled to notice, or a waiver by electronic transmission by the person entitled to notice, whether before or after the time of the event for which notice is to be given, shall be deemed equivalent to notice. Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting at the beginning of the meeting to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any meeting needs to be specified in any written waiver or any waiver by electronic transmission.

Adopted December 18, 2019

15

**Botannis Labs Mo. Corp.**
**a Missouri corporation**

**UNANIMOUS WRITTEN CONSENT IN LIEU OF FIRST MEETING OF**
**BOARD OF DIRECTORS**

December 18, 2019

Pursuant to the General and Business Corporation Law of Missouri, Title XXIII, Section 351 RSMo., and the By-Laws of Botannis Labs Mo. Corp., a Missouri corporation (the "Corporation"), the undersigned, being all of the directors of the Corporation, hereby consent to the adoption of the following resolutions without the necessity of a meeting:

Incorporation

RESOLVED:     To acknowledge that the Corporation was duly incorporated on July 25, 2019 by the filing of the Certificate of Incorporation with the Secretary of State of the State of Missouri.

By-Laws

RESOLVED:     That the Amended and Restated By-Laws of the Corporation in the form attached hereto as Exhibit A are hereby adopted, ratified and confirmed in all respects.

Addition of Director

RESOLVED:     That the size of the Board of Directors be increased to three (3), and that Mark Wolf be appointed to fill such newly-created Board seat.

Election of Officers

RESOLVED:     That the following named individuals be and they hereby are elected officers of the Corporation, each to hold the office set forth opposite his/her name until a successor is duly chosen and qualified or until such officer sooner dies, resigns, is removed or becomes disqualified:

|            |              |
|------------|--------------|
| President: | Daniel Altmann |
| Treasurer: | Matthew Wolf |
| Secretary: | Matthew Wolf |

No Certification of Common Stock

RESOLVED:     That the Common Stock of the Corporation (the "Common Stock") shall be uncertificated.

<u>Authorization and Issuance of Common Stock; Acceptance of Subscription Letters</u>

<u>RESOLVED</u>:    That the Corporation shall issue shares of the Corporation's Common Stock, with no par value, to the following subscribers in the amounts and for the consideration set forth below, and accept the Subscription Letters corresponding thereto from the named Subscribers:

| SUBSCRIBER NAME | NUMBER OF SHARES ISSUED | CONSIDERATION PAID |
| --- | --- | --- |
| BLMO, LLC | 4,300 | $43.00 |
| Daniel Altmann | 5,100 | $51.00 |
| Kevin Nguyen | 200 | $2.00 |
| Ann Costanza | 200 | $2.00 |
| Nicholas Kingsbury | 200 | $2.00 |

<u>RESOLVED</u>:    That Board of Directors of the Corporation (the "<u>Board</u>") has determined that the fair value of the consideration described above is as set forth above and that fair consideration for the initial issuance of the Corporation's Common Stock shall be $0.01 per share.

<u>RESOLVED</u>:    That upon receipt of the consideration and a subscription letter in the form attached hereto as <u>Exhibit A</u>, the officers of the Corporation be, and hereby are, authorized and directed to issue shares of Common Stock to the subscribers named above and that such shares, when issued pursuant to this resolution, will be validly issued, fully paid, and nonassessable.

<u>RESOLVED</u>:    That it is desirable and in the best interest of the Corporation that the sale and issuance of shares of Common Stock, be qualified or registered or exempted from qualification or registration in various states and under federal securities laws; that the officers of the Corporation be, and each of them acting singly hereby is, authorized and directed, in the name and on behalf of the Corporation, to determine the states in which appropriate action shall be taken to qualify or register or exempt from qualification or registration all or such number of the securities of the Corporation as such officers or officer may deem advisable; that such officers or officer hereby are authorized to perform, on behalf of the Corporation and its name, any and all such acts as any such officers or

officer may deem necessary or advisable in order to comply with the applicable federal laws and applicable laws of any such states, and, in connection therewith, to execute and file all requisite papers and documents, including, but not limited to, applications, reports, surety bonds, irrevocable consents and appointments of attorneys for service of process; and that the execution by any such officer or officers of any such paper or document or the doing by any of them of any act in connection with the foregoing matters shall conclusively establish their authority therefor from the Corporation and the approval and ratification by the Corporation of the papers and documents so executed and the action so taken.

RESOLVED: That if the securities or "Blue Sky" laws of any of the states in which the officers or an officer of the Corporation deem it necessary or advisable to qualify or register or exempt from qualification or registration the sale and issuance of the shares of Common Stock, or to register the Corporation as a dealer or broker, or any authority administering such laws, require or requires a prescribed form of preamble, resolution or resolutions, or consent to service of process in connection with such sale or issuance, each such preamble, resolution or consent is hereby adopted by the Board and the officers of the Corporation be, and each of them acting singly hereby is, authorized and directed, in the name and on behalf of the Corporation, to certify the adoption of such preamble, resolution or consent.

## Fiscal Year

RESOLVED: That the fiscal year of the Corporation shall be the twelve (12) months ending on December 31.

## Qualification to Do Business

RESOLVED: That the Corporation be qualified to do business in any jurisdiction that the Board may deem from time to time to be necessary to be so qualified and that the officers of the Corporation be, and they hereby are, authorized and empowered to execute and file, in the name of and on behalf of the Corporation, with the Secretary of State of such jurisdictions any and all documents, certificates or the like necessary to effect such qualification of the Corporation as a foreign corporation in such jurisdiction.

## Bank Accounts

RESOLVED: That the officers of the Corporation be, and each of them acting singly hereby is, authorized and directed, in the name and on behalf of the Corporation, to open such accounts with such banking institution as the officers deem necessary or appropriate to conduct the business of the

3

Corporation; that the Corporation hereby adopts, as though the same were presented herewith, any standard form of resolution required by any banking institution in order for the Corporation to establish an account with such banking institution; and that the officers of the Corporation be, and hereby are, authorized to certify the adoption of any such resolution and are directed to record any resolutions so certified in the Corporation's minute book.

General

RESOLVED: To authorize, empower and direct the officers of the Corporation, and each of them acting singly (i) to execute, seal and deliver in the name of and on behalf of the Corporation any and all documents, agreements and instruments to effectuate any of the foregoing resolutions, all with such changes therein as any of such officers may deem necessary or desirable, and (ii) to take such action (including without limitation the filing of any and all applications and the payment of any and all filing fees and expenses), or to cause the Corporation or any other person to take such action as may in the judgment of the officer so acting be necessary or desirable in connection with, or in furtherance of, any of the foregoing resolutions, and the execution and delivery of any such document, agreement or instrument or the taking of any such action shall be conclusive evidence of such officer's authority hereunder to so act.

RESOLVED: To ratify, confirm and approve all actions taken by the officers of the Corporation in connection with any and all of the transactions referred to in or contemplated by any of the foregoing resolutions.

RESOLVED: To direct that this Consent be filed with the records of meetings of the Directors.

*[Signature page follows - The remainder of this page is intentionally left blank]*

4

IN WITNESS WHEREOF, the undersigned directors have duly executed this Consent as of the date first set forth above.

_____
Matthew Wolf, Director


_____
Daniel Altmann, Director


_____
Mark Wolf, Director

Signature Page to Consent in Lieu of First Meeting of Board of Directors

Exhibit A

Amended and Restated By-Laws
(Attached)

<u>Exhibit B</u>

Form of Subscription Letter
(Attached)

## SHAREHOLDERS' AGREEMENT

THIS SHAREHOLDERS' AGREEMENT (this "Agreement"), is made and entered into as of December 18, 2019 (the "Effective Date"), by and among Botannis Labs Mo. Corp., a Missouri corporation (the "Company") and the holders of Stock (as defined below) identified on Schedule A hereto (the "Shareholders").

## W I T N E S S E T H :

WHEREAS, the Shareholders own all the issued and outstanding shares of Stock (as defined below) in the Company; and

WHEREAS, the Company and the Shareholders desire to provide for, among other things, certain restrictions on the ability of the Shareholders to sell or otherwise dispose of shares of Stock owned by such Shareholders; the right and ability to designate for election of certain individuals to the Board (as defined below); the Company's purchase of such Stock under certain circumstances; and the right of a Shareholder to purchase the Stock (as defined below) of another Shareholder under certain circumstances; all in order to maintain continuity in the management of the Company's business affairs and policies.

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements herein contained, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

## ARTICLE I

## DEFINITIONS

Section 1.1    Definitions.   The terms set forth in this Section 1.1 shall have the following meanings in this Agreement:

(a)    "Code" means the General Business and Corporation Law of Missouri, Section 351 R.s.MO ("GBCLM"), as may be amended from time to time hereafter.

(b)    "Common Stock" means any class of common stock of the Company and any securities issued in respect thereof, or in substitution therefor, in connection with any stock split, dividend or combination, or any reclassification, recapitalization, merger, consolidation, exchange or similar reorganization.

(c)    "Disability" means the inability of a Shareholder who is an employee of the Company, due to the condition of his or her physical, mental or emotional health, effectively to perform the essential functions of such Shareholder's job with or without reasonable accommodation for a continuous period of more than sixty (60) days, or for ninety (90) days in any period of one hundred eighty (180) consecutive days, as determined by a physician retained by the Company and licensed to practice medicine in the United States (a "U.S. Doctor").

(d)    "Involuntary Transfer" means any Transfer (as defined below), proceeding or action by which a Shareholder is, or is reasonably likely to be, deprived or divested of any right,

title or interest in or to the Stock other than in accordance with a term or condition set forth in this Agreement, including: any seizure under levy of attachment or execution; any transfer in connection with a foreclosure upon a pledge or bankruptcy (whether pursuant to the filing of a voluntary or an involuntary petition) or other court proceeding to a debtor-in-possession, trustee in bankruptcy or receiver or other officer or agency; any Transfer pursuant to a separation agreement or divorce, equitable or community or marital property distribution, judicial decree or other court order relating to the division or partition of property between spouses; or any Transfer in case of the death or dissolution, as the case may be, of a Shareholder, by will or by the laws of intestate succession, to the executors, administrators, testamentary trustees, legatees or beneficiaries of such Shareholder.

(e)     "Representative" means the personal representative of a decedent's estate (whether as an executor, administrator or otherwise) or trustee or receiver in bankruptcy, as the case may be.

(f)     "Requisite Interest" means the holders of Stock in excess of seventy-five percent (75%) of all Stock issued by the Company.

(g)     "Stock" means: (i) the issued and outstanding Common Stock of the Company; and (ii) all Stock Equivalents; in each case, now or hereafter owned or controlled by, or held for the benefit of, any Shareholder or any other person or entity bound by this Agreement, and any other equity interest of the Company, irrespective of class, series or kind.

(h)     "Stock Equivalents" means shares of the Common Stock of the Company issued or issuable upon exercise or conversion, as applicable, of stock options, warrants, or other convertible securities of the Company.

(i)     "Transfer" means any direct or indirect sale, transfer, exchange, gift, donation, assignment, hypothecation, bequeathment, pledge, mortgage, encumbrance, divestment of ownership or control or disposition or conveyance of any kind of all or any portion of the Stock held by a Shareholder, including, without limitation, an involuntary Transfer.

## ARTICLE II

## MANAGEMENT

Section 2.1     Board of Directors.

(a)     The Board of Directors of the Company (the "Board") shall consist of three (3) persons. Except as set forth in this Agreement, the business and affairs of the Company shall be managed, operated and controlled by or under the direction of the Board, and the Board shall have, and is hereby granted, the full and complete power, authority and discretion for, on behalf of and in the name of the Company, to take such actions as it may in its sole discretion deem necessary or advisable to carry out any and all of the objectives and purposes of the Company, subject only to the terms of this Agreement.

(b)     As of the date hereof, Matthew Wolf, Mark Wolf and Daniel Altmann are directors of the Company, and shall serve in such capacity until the next annual meeting of the

2

Board of Directors, at which time their successors shall be duly appointed, or until the earlier of their death, resignation or removal. Shareholder BLMO, LLC shall have the right to nominate successors to Matthew Wolf and Mark Wolf; Shareholder Daniel Altmann shall have the right to nominate successors to Daniel Altmann. Each Shareholder agrees to vote their shares at any meeting at which directors of the Company are elected in such a manner as to ensure that the designees of BLMO, LLC and Daniel Altmann are elected to such offices.

(c)     Each director shall not receive compensation for his or her service as a director to the Company; provided, that (i) each director shall be reimbursed by the Company for his or her reasonable travel and out-of-pocket expenses incurred in the performance of his or her duties as a director, including attendance in person at meetings of the Board, pursuant to such policies as from time to time established by the Board; and (ii) nothing herein shall be construed to preclude any director from serving the Company in any other capacity and receiving reasonable compensation for such services.

(d)     Except as set forth in this Agreement, all actions, consents and other matters before the Board shall be deemed approved by the Board if the majority of directors consent to such action, consent or other matter; provided, however, that if at any point in time there are three (3) or more directors of the Company, the following actions are prohibited to the Board without the consent of two-thirds of the directors:

(i)     the authorization of the issuance of any shares representing an equity interest in the Company;

(ii)     a merger, consolidation, conversion or other similar transaction involving the Company or any of the Company's subsidiaries; and

(iii)     the sale, lease or conveyance of all or substantially all of the assets of the Company or the Company's subsidiaries in the aggregate.

(e)     Notwithstanding any other provision of this Agreement, all acts requiring the consent of all Shareholders under the Code shall require the consent of all Shareholders. All others acts of the Company shall be vested in the Board and their designees to the fullest extent permitted by the Code.

(f)     This Agreement does not, and is not intended to, confer upon any director any rights with respect to continued employment by the Company, and nothing herein should be construed to have created any employment agreement with any director.

## ARTICLE III

## TRANSFERS GENERALLY

Section 3.1     General Restriction on Transfer of Stock. No Shareholder or any other third party bound by the terms of this Agreement shall Transfer any Stock, either in whole or in part, by operation of law or otherwise, except in strict compliance with the terms and conditions set forth in this Agreement. Any Transfer made in violation of this Section 3.1 (unless otherwise permitted by this Agreement) shall be considered null and void, and no such Transfer shall be recorded on

the stock record books of the Company and the purported transferee in any such Transfer shall not be treated (and the Shareholder proposing to make any such Transfer shall continue be treated) as the owner of such Stock for all purposes of this Agreement. The Company and each Shareholder acknowledge and agree that the restrictions on the Transfer of Stock set forth in this Agreement are reasonable because, among other things, they: (a) protect the legitimate business purposes of the Company and the interests of the Shareholders; (b) ensure the Company will be able to control who may participate in the Company's business; and (c) provide the estates of deceased Shareholders the ability to liquidate holdings of Stock.

Section 3.2    Permitted Voluntary Transfers.    Notwithstanding the terms and conditions of Section 3.1, the following Transfer by any Shareholder of all or part of such Shareholder's Stock shall be permitted and not otherwise subject to the provisions of Section 3.3 and Section 3.4 (except for Section 3.3(b), which shall apply regardless) if such Transfer is made:

(a)    By gift, will, the laws of descent and distribution, or otherwise for the benefit of such Shareholder's parent, spouse, life partner, child or grandchild (including adopted children and stepchildren) (each, a "Family Member"); provided, however, that for so long as such Shareholder is alive and not subject to a physical, mental, or emotional disability, as determined by a U.S. Doctor: (i) the Shareholder shall retain at least one (1) share of Stock subject to the Transfer to such Family Member; and (ii) the Shareholder shall retain the voting rights (if any) with respect to all of such Stock transferred. Upon the death of such Shareholder, such Family Member transferee will receive the one (1) share of Stock described hereinabove and possession of all voting rights, if any, previously retained by the deceased Shareholder with respect to all of such Stock transferred. In case of a Transfer to a Family Member: (A) the transferee or transferees shall receive and hold the Stock subject to the terms of this Agreement; (B) such Stock shall be subject to the options to purchase contained herein in the event the Stock owned by the transferor Shareholder is subject to such options; and (C) there shall be no further transfer of such Stock except in accordance with this Agreement; or

(b)    To a corporation, partnership or limited liability company, the stockholders, partners or members of which are only such Shareholder and/or Family Members of Shareholder; or

(c)    To a trust under which the distribution of Stock may be made only to such Shareholder and/or any Family Members of such Shareholder; or

(d)    To a charitable remainder trust, the income from which will be paid only to such Shareholder during such Shareholder's life; or

(e)    For bona fide estate planning purposes, either by will or by the laws of intestate succession, to such Shareholder's executors, administrators, testamentary trustees, legatees or beneficiaries.

Section 3.3    Sale of Stock.    In the event that a Shareholder desires to enter into a bona fide sale of all or any portion of such Shareholder's Stock to another individual or entity (the "Prospective Purchaser"), such Shareholder may Transfer such Stock only if: (i) the Board consents to such transfer; and (ii) the Transfer is effected in accordance with the following provisions:

4

(a)     Notice of Sale. The Shareholder shall promptly give written notice to the Company of any such offer to purchase the Stock (the "Sale Notice"). The Sale Notice, in addition to stating the fact of such Shareholder's intention to sell such Shareholder's Stock, shall state:

(i)     the name, business address and residence address of the Prospective Purchaser of the Stock;

(ii)     the number of shares and description of the Stock proposed to be sold; and

(iii)     the proposed consideration for the sale and the other terms and conditions of the proposed sale, including any finder's fee, commission or compensation proposed to be paid to any third party in connection with the proposed sale.

(b)     Compliance with Regulatory Requirements. The Board shall determine whether the transaction(s) proposed by the Sale Notice would constitute a violation of the Cannabis Laws. In the event that the consummation of such transaction(s) would constitute a violation of the Cannabis Laws or would otherwise make the Company unsuitable for licensure as a medical marijuana testing laboratory in the State of Missouri, such transaction(s) shall not be permitted.

(c)     Right of First Refusal of Company. In the event a Shareholder desires to enter into a bona fide sale of all or any portion of its Stock to another individual or entity, the Company shall have a right of first refusal (the "Right of First Refusal") for, and must notify the Shareholder of its election to exercise such right within, a period of thirty (30) days following Company's receipt of the Sale Notice (the "Right of First Refusal Period") to purchase such portion of the Shareholder's Stock at the same price and on the same terms set forth in the Sale Notice. The Shareholder (or the Shareholder's Representative, if applicable) shall not participate in the decision of the Company in exercising its rights under this Section 3.3(c), whether as a shareholder, director or officer of the Company; provided, however, that if necessary to secure valid corporate action, the Shareholder (or the Shareholder's Representative, if applicable) shall attend a meeting of the shareholders or directors and vote his or its shares or take such other action consistent with the request of a majority of the shares of the Stock not held by the Shareholder. The Company's exercise or failure to exercise the Right of First Refusal with respect to any proposed transfer described in a Sale Notice shall not affect the Company's ability to exercise the Right of First Refusal with respect to any proposed transfer described in any other Sale Notice, whether or not such other Sale Notice is issued by such Shareholder or issued by any other person with respect to a proposed transfer to the same Prospective Purchaser of the Stock proposed to be sold.

(d)     Closing. The closing of any sale of Stock by a selling Shareholder pursuant to this Section 3.3 shall take place at the principal office of the Company no later than fifteen (15) days after the date the selling Shareholder receives written notice of the exercise by the Company of refusal rights with respect to all of the shares of Stock set forth in the Sale Notice, or at such other time and place as may be mutually agreed upon by the parties. In the event of such sale to the Company, payment may be made in the manner described in Section 5.5 below, as applicable to such sale.

(e)     <u>Failure to Exercise Refusal Rights</u>. If the Company elects not to exercise its refusal rights or fails to purchase all of the shares of Stock set forth in the Sale Notice within the time periods set forth above or otherwise in accordance with this <u>Section 3.3</u>, the Shareholder proposing to sell such Stock may sell such Stock to the Prospective Purchaser on terms and conditions not more favorable than those set forth in the Sale Notice. The sale of the Stock shall occur no later than sixty (60) days following the end of the Right of First Refusal Period. Notwithstanding the foregoing, it is understood and agreed that: (i) any such sale of Stock shall be subject to the terms and conditions set forth in <u>Section 3.3</u>; and (ii) if the Prospective Purchaser is not a Shareholder, such purchaser must have delivered to the Company, prior to sale of the Stock, an agreement, in form and substance satisfactory to the Company, under which such purchaser joins in the execution of this Agreement and agrees to be bound by all of the terms and conditions hereof. The Prospective Purchaser shall also pay all reasonable expenses, including reasonable attorneys' fees, incurred by the Company in connection with the Transfer and execute and deliver to the Company any other agreements or instruments, in form and substance satisfactory to the Company, that the Company may deem necessary or advisable to effect the Transfer. If such Stock is not sold to the Prospective Purchaser by the end of the sixty (60)-day period, the Stock shall again become subject to the restrictions set forth in this <u>Section 3.3</u>.

Section 3.4     <u>Co-sale Right</u>.

.... .... .......... that one or more Shareholders holding no less than a Requisite Interest elects to make a sale or Transfer of Stock in any transaction (or series of related transactions) (the "<u>Proposed Transferor</u>"), and the Board consents to such sale or Transfer, such Proposed Transferor shall promptly notify all other Shareholders (each, a "<u>Co-Sale Rights Holder</u>"), in writing, at least thirty (30) days prior to the closing of the proposed transaction (or series of related transactions) (the "<u>Co-Sale Notice</u>"). The Co-Sale Notice shall describe in reasonable detail the proposed sale or Transfer, including the amount of Stock proposed to be sold or Transferred, the nature of such sale or Transfer, the consideration to be paid, the terms of such sale or Transfer and the name and address of each prospective purchaser or transferee.

(b)     <u>Election to Co-Sale</u>. Each Co-Sale Rights Holder shall have the right, exercisable upon written notice to the Board and such Proposed Transferor within thirty (30) days after receipt of the Co-Sale Notice, to require that such Co-Sale Rights Holder participate in such proposed sale or Transfer on the same terms and conditions as specified in the Co-Sale Notice (each Co-Sale Rights Holder electing to participate in such proposed Transfer is referred to as an "<u>Electing Co-Sale Shareholder</u>"), as such terms and conditions may be modified as contemplated by <u>Section 3.4(c)</u>, proportionately for each Electing Co-Sale Shareholder up to the amount described in Section 3.4(d). To the extent that one (1) or more Electing Co-Sale Shareholders determine that they will exercise their rights to participate in accordance with the terms set forth in this <u>Section 3.4</u>, the Proposed Transferor will increase the amount of equity to be sold or Transferred to the prospective purchaser or transferee by the amount of equity the Electing Co-Sale Shareholders elect to include in such sale or Transfer, unless the prospective purchaser or transferee does not wish to purchase such additional equity, in which case the amount of Stock that the Proposed Transferor may sell or Transfer in the proposed transaction shall be correspondingly reduced.

6

(c)     Changes in Terms. If (i) the price to be paid by the prospective purchaser or transferee for the Proposed Transferor's Stock shall decrease from the price set forth in the Co-Sale Notice, which decrease is acceptable to such Proposed Transferor, or (ii) any other material change in the terms or conditions set forth in the Co-Sale Notice which are less favorable to such Proposed Transferor, but which are acceptable to such Proposed Transferor, then, in either case, such Proposed Transferor shall promptly notify the Electing Co-Sale Shareholders in writing of such decrease or other material change, and each Electing Co-Sale Shareholder in its sole discretion, shall have ten (10) days from the date of receipt of such written notice to modify the amount of Stock that it elected to sell to the prospective purchaser or transferee as previously indicated in the written notice delivered by such Electing Co-Sale Shareholder pursuant to Section 3.4(b).

(d)     Allocation of Co-Sale Rights. In connection with any proposed sale or Transfer of Stock under this Section 3.4, each Electing Co-Sale Shareholder shall have the right, but not the obligation, to sell or Transfer up to and including an amount of Stock equal to the product obtained by multiplying (i) the amount of Stock held by such Co-Sale Rights Holder, multiplied by (ii) a fraction, the numerator of which is the amount of Stock that the Proposed Transferor proposes to sell or Transfer, and the denominator of which is the total amount of Stock beneficially owned by the Proposed Transferor. The amount of Stock that the Proposed Transferor may Transfer shall be reduced by the Stock that the Electing Co-Sale Shareholders elect to Transfer pursuant to this Section 3.4.

Section 3.5     Drag-along Right. In the event that the Board and one or more Shareholders holding no less than a Requisite Interest elect to effect a Sale of the Company (as defined below), then each Shareholder hereby agrees to vote (in person, by proxy or by action by written consent as applicable) to the extent such Shareholder has the right to vote, all shares of Stock now or hereafter directly or indirectly owned of record or beneficially by such Shareholder in favor of, and adopt, such Sale of the Company and to execute and deliver all related documentation and take such other action in support of such Sale of the Company as shall reasonably be requested by the Company in order to carry out the terms and provision of this Section 3.5, including without limitation executing and delivering instruments of conveyance and transfer, and any purchase agreement, merger agreement, indemnity agreement, escrow agreement, consent, waiver, governmental filing, share certificates duly endorsed for transfer (free and clear of impermissible liens, claims and encumbrances) and any similar or related documents. Further, each Shareholder hereby agrees to refrain from exercising any dissenters' rights, rights of appraisal or similar rights under applicable law at any time with respect to such Sale of the Company.

For purpose hereof, a "Sale of the Company" means: (a) a merger or consolidation in which (i) the Company is a constituent party, or (ii) a subsidiary of the Company is a constituent party and the Company issues shares of its Stock pursuant to such merger or consolidation (except any such merger or consolidation involving the Company or a subsidiary in which the shares of Stock of the Company outstanding immediately prior to such merger or consolidation continue to represent, or are converted into or exchanged for shares of capital stock that represent, immediately following such merger or consolidation, a majority, by voting power, of the capital stock of (A) the surviving or resulting corporation or (B) if the surviving or resulting corporation is a wholly-owned subsidiary of another corporation immediately following such merger or consolidation, the parent corporation of such surviving or resulting corporation); (b) the sale, lease, transfer, exclusive

7

license or other disposition, in a single transaction or series of related transactions, by the Company or any subsidiary of the Company of all or substantially all the assets of the Company and its subsidiaries taken as a whole, or the sale or disposition (whether by merger or otherwise) of one (1) or more subsidiaries of the Company if substantially all of the assets of the Company and its subsidiaries taken as a whole are held by such subsidiary or subsidiaries, except where such sale, lease, transfer, exclusive license or other disposition is to a wholly-owned subsidiary of the Company; (c) the sale of the Company's Stock pursuant to an underwritten public offering registered under the Securities Act of 1933, as amended; or (d) a merger, consolidation, stock sale, reorganization, acquisition, or other transaction in which at least fifty percent (50%) of the issued and outstanding voting securities of the Company are transferred to a third party that did not own any Company securities prior to such transaction, excluding a bona fide equity financing

Section 3.6      Joinder. In order for any person who is not a Shareholder as of the Effective Date to become a Shareholder pursuant to any Transfer after the Effective Date as set forth in this Article

substantially in the form of the Joinder Agreement attached as Schedule B hereto (the "Joinder Agreement"), as well as any other documents or instruments that the Board determines may be

## ARTICLE IV

## EMPLOYMENT

Section 4.1      Involuntary Transfers.

(a)      Notice of Involuntary Transfer. Notwithstanding the terms and conditions of Section 3.1, in the event of the death, winding up and dissolution, bankruptcy, separation or divorce of a Shareholder, or the occurrence of any other event that would, or is, reasonably likely to result in an Involuntary Transfer of the Shareholder's Stock (each, an "Involuntary Transfer Event"), such Shareholder (the "Transferring Shareholder") or the Transferring Shareholder's Representative, if applicable, shall give written notice to the Company no later than ten (10) days following such Involuntary Transfer Event (or sixty (60) days, in the event of death) (the "Involuntary Transfer Notice") stating that an Involuntary Transfer Event occurred, the reason therefor, the date of the Involuntary Transfer Event, the name and address of any person or entity to whom the Involuntary Transfer would be or was made (the "Involuntary Transferee"), and the type and amount of Stock that would be or was acquired by the Involuntary Transferee.

(b)      Purchase Option upon Involuntary Transfer Events. Upon receipt of an Involuntary Transfer Notice in connection with an Involuntary Transfer Event, the Company shall by the Transferring Shareholder at its Fair Market Value (as defined in Section 4.3 below) in accordance with the terms and conditions set forth in this Section 4.1. To exercise its purchase option pursuant hereto, the Company must deliver a written notice to the Transferring Shareholder or the Transferring Shareholder's Representative, as the case may be, within thirty (30) days of its receipt of the Involuntary Transfer Notice, notifying the Transferring Shareholder or the

Transferring Shareholder's Representative, as the case may be, the Company intends to exercise its purchase option as to all or any portion of the Stock subject to such purchase option.

(c)     **Failure to Exercise Option**.  If the Company elects not to exercise its purchase option or fails to purchase all of the Transferring Shareholder's Stock pursuant to Section 4.1(b) above, then the Involuntary Transferee (if the Involuntary Transfer has occurred) or the Transferring Shareholder or the Transferring Shareholder's Representative, if and to the extent applicable (if the Involuntary Transfer has not yet occurred), shall retain such Stock and such Stock will continue to be subject to the restrictions contained in this Agreement.

Section 4.2     **Transfer Upon Termination of Employment**.  Notwithstanding the terms and conditions of Section 3.1, a Shareholder may Transfer his or her Stock in the Company in accordance with the following provisions:

(a)     **Disability**.  If a Shareholder is an employee of the Company and such Shareholder's employment with the Company terminates due to such Shareholder's Disability, the Company shall have the right and option, but not the obligation, to purchase from such Shareholder all or any portion of the Stock owned thereby, at its Fair Market Value, in accordance with the other terms and conditions set forth in this Article IV.  The Company shall notify such Shareholder of its intention to purchase the Stock within ninety (90) days following the determination of Disability.  If the Company fails to exercise its option to purchase a Shareholder's Stock pursuant to this Section 4.2(a), then the Shareholder (or such Shareholder's Representative, if applicable) shall retain such Stock and such Stock will continue to be subject to the restrictions contained in this Agreement.

(b)     **Termination of Employment for Cause**.  If a Shareholder is an employee of the Company and such Shareholder's employment with the Company terminates for Cause (as defined herein), such Shareholder shall forfeit automatically to the Company, without receiving any consideration therefrom, all right, title and interest in and to the Stock owned by the Shareholder and any certificates evidencing such shares shall be considered cancelled and returned to the Company's treasury.  For purposes hereof, "Cause" means: (i) a final adjudication which determines that the Shareholder has committed fraud, misappropriation, dishonesty, embezzlement, or similar crime involving moral turpitude involving the Company, the Company's assets; (ii) conviction of or plea of guilty or no contest to a felony; or (iii) material breach of this Agreement or the terms and conditions in any written agreement between the Company and the Shareholder which remains uncured after any applicable cure period.

(c)     **Resignation**.  If a Shareholder resigns or voluntarily terminates his or her employment with the Company, upon notice to the Company, the Company shall have the right, but not the obligation, to purchase from such Shareholder all or any portion of the Stock owned thereby, at its Fair Market Value, in accordance with the other terms and conditions set forth in this Article IV.  Any notice of termination or resignation by a Shareholder shall not be effective if such Shareholder has committed, or has been given notice of, an act or omission constituting Cause, and the Board subsequently determines there existed grounds for termination of the

9

Shareholder for Cause. In such case, the terms set forth in Section 4.2(b) above shall apply. If the Company elects not to exercise its purchase option or fails to purchase all of a Shareholder's Stock pursuant to this Section 4.2(c) (in the event Section 4.2(b) does not apply), then such Shareholder (or such Shareholder's Representative, if applicable) shall retain any Stock not purchased by the Company and such Stock will continue to be subject to the restrictions contained in this Agreement.

Section 4.3    Fair Market Value. For purposes hereof, the "Fair Market Value" of the Stock shall mean the value of the Stock as determined by the mutual agreement of the selling Shareholder, such Shareholder's Representative, or the Involuntary Transferee, as applicable (the "Selling Party"), and the Board (if the Company is purchasing the Stock) or the purchasing Shareholders (if Shareholders are purchasing the Stock), as applicable (the "Purchasing Party"), as of the date of the occurrence of the Involuntary Transfer Event under Section 4.1(a) above or the date of the termination of employment due to Disability under Section 4.2(a) above or the date of resignation under Section 4.2(c) above, as the case may be. The Selling Party shall not participate in any decisions made by the Board under this Section 4.3, whether as a shareholder, director or officer of the Company; provided, however, that if necessary to secure valid corporate action, the Selling Party shall attend a meeting of the shareholders or directors and vote his or its shares or take such other action consistent with the request of a majority of the shares of the Stock not held by the Selling Party. If the Selling Party and the Purchasing Party do not come to an agreement with respect to the Fair Market Value within sixty (60) days from the date of notice of election to purchase the Selling Party's Stock, the Fair Market Value shall mean the value of the Stock as determined by appraisal as follows: the Selling Party and the Purchasing Party shall each name one (1) appraiser and the two (2) appraisers shall determine the value as of the applicable date. If the two (2) appraisers cannot agree upon the value of the Stock, they shall appoint a third appraiser and the average of the two (2) appraisals nearest in amount shall be binding.

Section 4.4    Closing. The closing of any sale of Stock pursuant to this Article IV (the "Closing") shall take place at the principal office of the Company no later than fifteen (15) days after the determination of the Fair Market Value of the Stock pursuant to Section 4.3, or at such other time and place as may be mutually agreed upon by the Company, the Purchasing Party, and the Selling Party.

Section 4.5    Payment for Stock. At the Closing, the Purchasing Party shall pay for the Stock by delivering to the Selling Party, by cash or cashier's check or by wire transfer, the Fair Market Value of the Stock as determined in accordance with Section 4.3 (the "Purchase Price"). Notwithstanding the foregoing, the Company shall be entitled, in its sole discretion, to pay the Purchase Price in installment payments (the "Installment Payments") by delivering to the Selling Party at the Closing an executed promissory note in a principal amount equal to the Purchase Price (the "Note"). If the Company elects to pay the Purchase Price in Installment Payments, the balance of the Note will be payable over three (3) years in equal monthly payments of principal and interest, payable on the last business day of each month, with the first installment payable on the last business day of the first month immediately following the Closing. The unpaid balance of the Note will bear interest on an annual basis at the prime rate (as of the date of Closing as reported in the Wall Street Journal) from the date of the Closing until paid in full. The Company shall have the right to prepay all or any part of the unpaid principal balance of the Note at any time and from time to time without penalty. The Company has the right to offset any amounts payable to the

10

Selling Party under the Note against any losses, damages or other liabilities resulting from (or which could reasonably be expected to result from) the material breach of any of the selling Shareholder's agreements with the Company, including a Shareholder's written employment agreement with the Company or such other terms and conditions of employment or service between the selling Shareholder and the Company if the Shareholder does not have a written employment agreement. At the Closing, the Selling Party shall deliver to the Company all of the certificates representing the Selling Party's Stock, duly endorsed in blank or with duly endorsed stock powers attached thereto, all in form suitable for the transfer of such shares, free and clear of all liens, encumbrances and restrictions (other than those imposed by the Company's certificate of incorporation, bylaws or applicable laws), along with such other papers, certificates and documents as the Company may request. Each Shareholder understands and agrees as a condition precedent to receipt of payment from the Purchasing Party hereunder, such Shareholder will execute and deliver to the Company such non-competition, non-solicitation, confidentiality and/or release agreements as the Company may request prior to the Closing.

Section 4.6    Joinder. In order for any person who is not a Shareholder as of the Effective Date to become a Shareholder pursuant to any Transfer after the Effective Date as set forth in this Article IV, such person shall have executed and delivered to the Company a written undertaking substantially in the form of the Joinder Agreement attached as Schedule B hereto (the "Joinder Agreement"), as well as any other documents or instruments that the Board determines may be necessary.

## ARTICLE V

### REMOVAL FOR LICENSURE

Section 5.1    Removal for Licensure.

(a)    Affected Shareholders. To the extent permitted by applicable law, if any of the following occur with respect to a Shareholder, or to an owner, officer, manager, executive or director of an entity that is a Shareholder, all interests of that Shareholder in the Company (the "Affected Shareholder") shall, subject to Section 5.1(g), automatically and immediately terminate, and the Affected Shareholder shall cease to be a Shareholder:

(i)    The Affected Shareholder is convicted of any criminal offense, if a conviction of the offense in question would, pursuant to the Cannabis Laws, disqualify the Affected Shareholder or the Company from directly or indirectly obtaining, maintaining or renewing a license to conduct a commercial business involving cannabis. "Cannabis Laws" means any cannabis laws of the State of Missouri, including but not limited to the commercial cannabis ordinances of any local jurisdiction applicable to the operations of the Company, and Article XIV of the Missouri Constitution and its implementing regulations promulgated by the Missouri Department of Health and Senior Services.

(ii)    The Affected Shareholder (or any person that it owns or controls) incurs a revocation of any Missouri state or local business license, and it is determined by the Board that such revocation has a material adverse effect upon

11

the issuance or continued good standing of the Company's cannabis business license(s).

(iii)   The state or local licensing authority issues a formal recommendation stating that the Affected Shareholder is unfit for occupational licensure under the Cannabis Laws.

(iv)   The state or local licensing authority issues a formal recommendation against the issuance to the Company of a cannabis business license (or renewal thereof) or revokes a cannabis business license, which recommendation cites the participation of the Affected Shareholder as a material factor in the decision, or the state or local licensing authority conditions the issuance of a cannabis business license on the Company removing the Affected Shareholder in the Company.

(v)   The state or local licensing authority advises the Company in writing, or it is otherwise determined by court order, that a decision on the Company's cannabis business license is being delayed beyond six (6) months following the filing of the Company's application for a cannabis business license, and the Company is advised before or after said date that the sole reason for such delay is the participation of or concerns about the Affected Shareholder.

(vi)   The Affected Shareholder fails to promptly provide the Company with such information concerning each Shareholder as set forth in Section 5.1(h).

(vii)   Each Shareholder hereby agrees to promptly provide the Company all such information concerning such Shareholder as shall be required to obtain, maintain or renew all licenses under the Cannabis Laws necessary or advisable for the Company to operate its commercial cannabis activities.

(b)   Continued Existence of Company.   The Company shall continue in existence notwithstanding the automatic termination of any Shareholder pursuant to this Section 5.1. Notwithstanding any provision of this Agreement to the contrary, if the Affected Shareholder is an entity and the occurrence of any of the events enumerated in Section 5.1(a) above is due to an owner, officer, manager, executive or director of the Affected Shareholder, the Affected Shareholder shall have an option to be restored to its ownership position before the divestiture events occur if the Affected Shareholder, a court of law, or the applicable state provides a written assurance or order that the Affected Shareholder has removed the owner, officer, manager, executive or director that caused any of the events enumerated in Section 5.1(a) above, pursuant to the terms of the Affected Shareholder's governing documents.

(c)   Payment to Affected Shareholder.   The Company shall be liable for the terminated ownership interest of the Affected Shareholder as follows: (i) the Board and the Affected Shareholder shall determine the Fair Market Value of the Affected Shareholder's Stock by mutual agreement as soon as possible after the date of termination of the Affected Shareholder's ownership interest ("Termination Date"); and (ii) if the Affected Shareholder and the Board cannot agree on a Fair Market Value within thirty (30) days of the Termination Date, then the Fair Market

Value of the Affected Shareholder's Stock shall be the value of the Stock as determined by appraisal in accordance with the following: the Board and the Affected Shareholder shall each name one (1) appraiser, and the two (2) appraisers shall determine the value as of the Termination Date. If the two (2) appraisers cannot agree upon the value of the Stock as of the Termination Date, they shall together appoint a third appraiser, and the average of the two (2) appraisals nearest in amount shall be binding in the determination of Fair Market Value. The purchase price for the stock of the Affected Shareholder shall be fifty percent (50%) of the Fair Market Value of such Stock.

(d)     Manner of Payment. The Company shall pay the Affected Shareholder the amount set forth in Section 5.1(c) for the Affected Shareholder's Stock within thirty (30) business days of the determination thereof by the Board and the Affected Shareholder or, as the case may be, the appraiser(s). Such payment shall be made by issuing to the Affected Shareholder an unsecured, five percent (5%) per annum interest bearing promissory note payable in equal quarterly installments (of principal and accrued interest) over a period of three (3) years.

(e)     Specific Matters. Notwithstanding anything in this Agreement to the contrary: (i) if a director is an Affected Shareholder, actions of the Company shall not require the consent of such director, but shall instead require the consent of Shareholders holding eighty percent (80%) of the Stock (excluding the Stock held by the director).

(f)     Further Assurances. The Board and the Shareholders shall take all actions as may be reasonably necessary to consummate the sale contemplated by this Section 5.1, including, without limitation, entering into agreements and delivering certificates and instruments and consents as may be deemed necessary or appropriate.

(g)     Curative Provision. Notwithstanding the foregoing, to the extent permitted by the Cannabis Laws, prior to the termination of the Affected Shareholder's interests pursuant to this Section 5.1, the Company and the Affected Shareholder shall use reasonable best efforts to agree on an alternative arrangement to effectuate the arrangements under this Agreement in a manner that allows the Company to achieve its purpose in accordance with the Cannabis Laws.

(h)     Provision of Information. Each Shareholder hereby agrees to promptly provide the Company all such information concerning such Shareholder as shall be required to obtain, maintain or renew all licenses under the Cannabis Laws necessary or advisable for the Company to operate its commercial cannabis activities.

## ARTICLE VI

## COVENANTS

Section 6.1     Other Business Activities.[2]  The parties hereto, including the Company, expressly acknowledge and agree that: (i) the Shareholders are permitted to have, and may presently or in

---

[2] VS LLP: Because Botannis MO isn't technically a subsidiary of Botannis Labs, Inc. or formally affiliated with other state-level entities, operating testing labs in other states could theoretically be seen as a conflict if interstate commerce ever opens up. Also included in case Matt wants to pursue hemp opportunities, etc. However, let us know if you would rather have standard non-competition clauses.

the future have, investments or other business or strategic relationships, ventures, agreements or other arrangements with entities other than the Company that are engaged in the business of the Company, or that are or may be competitive with the Company (any such other investment or relationship, an "Other Business"); (ii) none of the Shareholders will be prohibited by virtue of their investment in the Company from pursuing and engaging in any Other Business; (iii) none of the Shareholders will be obligated to inform the Company or any other Shareholder of any opportunity, relationship or investment in any Other Business (a "Company Opportunity") or to present any Company Opportunity to the Company, and the Company hereby renounces any interest in any Company Opportunity and any expectancy that a Company Opportunity will be offered to it; (iv) nothing contained herein shall limit, prohibit or restrict any Shareholder from serving on the board of directors or other governing body or committee of any Other Business; and (v) no other Shareholder will acquire, be provided with an option or opportunity to acquire, or be entitled to any interest or participation in any Other Business as a result of the participation therein of any other Shareholder. The parties hereto expressly authorize and consent to the involvement of any Shareholder in any Other Business; *provided*, that any transactions between the Company and any Other Business will be on terms no less favorable to the Company than would be obtainable in a comparable arm's-length transaction. The parties hereto expressly waive, to the fullest extent permitted by applicable law, any rights to assert any claim that such involvement breaches any fiduciary or other duty or obligation owed to the Company or any Shareholder or to assert that such involvement constitutes a conflict of interest by the Shareholder participating in the Other Business with respect to the Company or any other Shareholder. Notwithstanding the foregoing, and in compliance with the Cannabis Laws, no party hereto shall be permitted to obtain any interest in any entity licensed as a Medical Marijuana Cultivation Facility, Infused Products Manufacturing Facility or Dispensary Facility in the State of Missouri.

Section 6.2     Provision of Information.

(a)     Each Shareholder hereby agrees to promptly provide the Company all such information concerning such Shareholder as shall be required to obtain, maintain or renew all licenses under the Cannabis Laws necessary or advisable for the Company to operate its commercial cannabis activities.

(b)     Each Shareholder acknowledges and is aware that the Company is a commercial cannabis business and/or shall enter into contractual arrangements with commercial cannabis businesses. Each Shareholder further acknowledges that as a result of the Company or subsidiary engaging in commercial cannabis business or business with commercial cannabis businesses, Shareholder (and/or its respective owners, directors, officers and managers (collectively, the "Shareholder Parties")) may be required to be listed as owners, financial interest holders or in another capacity of the Company or other commercial cannabis businesses under the Cannabis Laws. The Company and each Shareholder shall promptly and without delay work in good faith to include the Shareholder Parties as a financial interest holder or owner, as applicable (as may be required by the Cannabis Laws as determined in good faith by the Company) on the Company's licenses and, if applicable as determined in good faith by the Company, on any other licenses of any entity with which the Company or any subsidiary has contracted. Each Shareholder agrees to work in good faith to provide the Company with all information regarding the Shareholder Parties as may be required by the Cannabis Laws. The Shareholders and the Company further agree and acknowledge that any required disclosure of the Shareholder Parties to the state

14

for purposes of the Cannabis Laws shall not alter the respective liabilities and indemnifications of the Shareholders as set forth in this Agreement.

## ARTICLE VII

## REPRESENTATIONS AND WARRANTIES

Section 7.1   Representations and Warranties. Each Shareholder, severally and not jointly, represents and warrants to the Company and to each other that:

(a)     For each such Shareholder that is not an individual, such Shareholder is a company duly organized, validly existing and in good standing under the laws of its state of incorporation or organization, as applicable.

(b)     As applicable, each Shareholder has full capacity and/or corporate power and authority to execute and deliver this Agreement, to perform its obligations hereunder and to consummate the transactions contemplated hereby. The execution and delivery of this Agreement, the performance of its obligations hereunder and the consummation of the transactions contemplated hereby have been duly authorized by all requisite action of such Shareholder. Such Shareholder has duly executed and delivered this Agreement.

(c)     This Agreement constitutes the legal, valid and binding obligation of such Shareholder, enforceable against such Shareholder in accordance with its terms except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether enforcement is sought by proceedings in equity or at law). The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby, require no action by or in respect of, or filing with, any governmental authority.

(d)     The execution, delivery and performance by such Shareholder of this Agreement and the consummation of the transactions contemplated hereby do not (i) conflict with or result in any violation or breach of any provision of any of the organizational documents of such Shareholder, as applicable; (ii) conflict with or result in any violation or breach of any provision of any applicable law; or (iii) require any consent or other action by any person under any provision of any material agreement or other instrument to which the Shareholder is a party.

(e)     Except for this Agreement, such Shareholder has not entered into or agreed to be bound by any other agreements or arrangements of any kind with any other party with respect to any Stock of the Company, including agreements or arrangements with respect to the acquisition or disposition of any such Stock or any interest therein or the voting of any Stock (whether or not such agreements and arrangements are with the Company or any other Shareholder).

(f)     If the Shareholder is an individual, all of the below are true and correct for the Shareholder and if the Shareholder is a partnership, corporation, limited liability company or other entity, then all of the below are true and correct for each equity holder of the Shareholder: (i) he or she is at least twenty-one (21) years of age; (ii) he or she has never been convicted of a felony; and (iii) he or she is not a law enforcement officer or employed by the Missouri Department

of Health and Senior Services.

(g)     Subject to the other provisions of this Agreement, the representations and warranties contained herein shall survive the date of this Agreement and shall remain in full force and effect for the full period of all applicable statutes of limitations.

## ARTICLE VIII

## MISCELLANEOUS

Section 8.1     Expenses.  All costs and expenses, including fees and disbursements of counsel, financial advisors and accountants, incurred in connection with the preparation and execution of this Agreement, or any amendment or waiver hereof, and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses.

Section 8.2     Further Assurances.  Each Shareholder will take all actions which may be reasonable or desirable in connection with the execution of this Agreement and the consummation of the transactions contemplated by the Agreement, and in furtherance thereto will give any notices to, make any filings with, and use its reasonable efforts to obtain any authorizations, consents, and approvals, and take such other reasonable actions, which may be required to consummate the transactions contemplated by this Agreement.

Section 8.3     Notices.  All notices, requests, consents, claims, demands, waivers and other communications hereunder shall be in writing and shall be deemed to have been given: (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by facsimile or e-mail of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient; or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this Section):

| | |
|---|---|
| If to the Company: | 1770 Blake Street |
| | Denver, Colorado 80202 |
| | E-mail: matt@wolfcap.com |
| | Attention: Matthew Wolf |
| | |
| with a copy to: | Vicente Sederberg LLP |
| | 455 Sherman St., Suite 390 |
| | Denver, CO 80203 |
| | E-mail: charlie@vicentesederberg.com |
| | Attention: Charles Alovisetti |

If to a Shareholder, to such Shareholder's respective mailing address as set forth on Schedule A.

16

Section 8.4    Headings. The headings in this Agreement are inserted for convenience or reference only and are in no way intended to describe, interpret, define, or limit the scope, extent or intent of this Agreement or any provision of this Agreement.

Section 8.5    Severability. If any term or provision of this Agreement is held to be invalid, illegal or unenforceable as a matter of law in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon such determination that any term or other provision is invalid, illegal or unenforceable, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

Section 8.6    Entire Agreement. This Agreement and any Joinder Agreements executed after the date hereof, and all related Exhibits and Schedules hereto constitute the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such subject matter.

Section 8.7    Successors and Assigns; Assignment. Subject to the rights and restrictions on Transfers set forth in this Agreement, this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, Representatives, successors and assigns. This Agreement may not be assigned by any Shareholder except as provided in this Agreement and any such assignment in violation of this Agreement shall be null and void.

Section 8.8    No Third-Party Beneficiaries. This Agreement is for the sole benefit of the parties hereto (and their respective heirs, executors, administrators, successors and assigns) and nothing herein, express or implied, is intended to or shall confer upon any other Person, including any creditor of the Company, any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

Section 8.9    Amendment. This Agreement shall not be modified or amended except by written consent of the Company and Shareholders holding a Requisite Interest of the issued and outstanding shares of Common Stock; provided, however, that (a) any such modifications or amendments that disproportionately affect in any material respect the rights of any Shareholder relative to any other Shareholder shall also require the written consent of the Shareholder who is disproportionately affected by such modification or amendment; and (b) amendments to Schedule A relating to any new issuance, redemption, repurchase or Transfer of Stock done or made in accordance with this Agreement may be made by the Board without the consent of the Requisite Interest.

Section 8.10    Waiver. No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving. No waiver by any party shall operate or be construed as a waiver in respect of any failure, breach or default not expressly identified by such written waiver, whether of a similar or different character, and whether

occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege. For the avoidance of doubt, nothing contained in this <u>Section 8.10</u> shall diminish any of the explicit and implicit waivers described in this Agreement.

Section 8.11    <u>Governing Law</u>.  All issues and questions concerning the application, construction, validity, interpretation and enforcement of this Agreement shall be governed by and construed in accordance with the internal laws of the State of Missouri, without giving effect to any choice or conflict of law provision or rule (whether of the State of Missouri or any other jurisdiction).

Section 8.12    <u>Termination</u>.  This Agreement shall automatically terminate and be null and void and without further legal effect upon the first to occur of the following:

    (a)    the commencement of the complete liquidation of the Company, whether voluntarily, in bankruptcy or otherwise, or the sale or other disposition of all or substantially all of the business and assets or Stock of the Company;

    (b)    the agreement in writing of each of the Shareholders to terminate this Agreement; or

    (c)    with respect to a particular Shareholder, when that Shareholder no longer owns any Stock.

Section 8.13    <u>Dispute Resolution</u>.  This Agreement and any dispute, claim, or controversy arising out of, connected with, or relating to this Agreement ("<u>Dispute</u>") shall be governed by and construed in accordance with the laws of the State of Missouri, without regard to conflict of law principles that would result in the application of any law other than the law of the State of Missouri. All Disputes shall, to the extent possible, be settled amicably by prompt good faith negotiations between the representatives of the parties hereto.  In the event the parties cannot resolve a Dispute within thirty (30) days of the commencement of such discussions, such Dispute shall be resolved by finally binding arbitration as provided herein.  Arbitration shall be conducted under, and governed by, the then current Commercial Rules of Arbitration of the American Arbitration Association (the "<u>Arbitration Rules</u>").  All arbitration hearings shall be conducted in St. Louis, Missouri.  Each Shareholder and the Company hereby agree that a judgment upon an arbitration award may be entered in any court having appropriate jurisdiction.  Each Shareholder and the Company hereby irrevocably consent to the exclusive personal jurisdiction of, and venue in, the state courts located in St. Louis, Missouri.  The arbitration shall be conducted by a panel of three (3) persons selected as follows: each party involved in the Dispute shall select one (1) person to act as arbitrator; and such selected arbitrators shall select another arbitrator within thirty (30) days of their appointment; all in accordance with the Arbitration Rules.  Each party to the Dispute shall bear its own costs and expenses and attorneys' fees, and an equal share of the arbitrators' fees and any administrative fees of arbitration.

Section 8.14    <u>Additional Shareholders</u>.  In the event that after the Effective Date, the Company issues shares of Stock to any person or entity, the Company shall, as a condition to such issuance,

cause such person or entity to execute a counterpart signature page hereto as a "Shareholder," and such person shall thereby be bound by, and subject to, all of the terms and provisions of this Agreement applicable to a Shareholder.

Section 8.15   Confidentiality.   Each Shareholder agrees that such Shareholder will keep confidential and will not disclose, divulge, or use for any purpose (other than to monitor its investment in the Company) any confidential information or trade secrets of the Company, including but not limited to personnel information, know-how, customer lists, technical or financial data, obtained from the Company pursuant to the terms of this Agreement, unless such confidential information: (a) is known or becomes known to the public in general (other than as a result of a breach of this Section 8.15 by such Shareholder); (b) is or has been independently developed or conceived by the Shareholder without use of the Company's confidential information as must be evidenced by prior written records; or (c) is or has been made known or disclosed to the Shareholder by a third party without a breach of any obligation of confidentiality such third party may have to the Company and without such third party's violation of applicable law.

Section 8.16   Equitable Remedies.   Each party hereto acknowledges that a breach or threatened breach by such party of any of its obligations under this Agreement would give rise to irreparable harm to the other parties, for which monetary damages would not be an adequate remedy, and hereby agrees that in the event of a breach or a threatened breach by such party of any such obligations, each of the other parties hereto shall, in addition to any and all other rights and remedies that may be available to them in respect of such breach, be entitled to equitable relief, including a temporary restraining order, an injunction, specific performance and any other relief that may be available from a court of competent jurisdiction (without any requirement to post bond).

Section 8.17   Counterparts.   This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

Section 8.18   Spousal Consent.   Each Shareholder who is married on the date of this Agreement shall cause his or her spouse to execute and deliver to the Company a consent of spouse in the form of Schedule C hereto (a "Spousal Consent"), dated as of the date hereof. If any Shareholder should marry following the date of this Agreement, such Shareholder shall cause his or her spouse to execute and deliver to the Company a Spousal Consent within thirty (30) days thereof.

[Signature page follows]

IN WITNESS WHEREOF, the parties hereto execute this Agreement to be effective as of the Effective Date.

**THE COMPANY**:

Botannis Labs Mo Corp.

_____

By:   Matthew Wolf
Title: Secretary/Treasurer

**SHAREHOLDERS**:

_____

BLMO, LLC
By: Matthew Wolf
Its:  Sole Member

_____

Daniel Altmann

_____

Ann Costanza

_____

Kevin Nguyen

_____

Nicholas Kingsbury

**SCHEDULE A**

**COMPANY SHAREHOLDERS**

| Shareholder Name | Shareholder Address | Shares of Common Stock Owned | Percentage of Company Owned |
|---|---|---|---|
| BLMO, LLC | 1770 Blake St. Denver, CO 80202 | 4,300 | 43% |
| Daniel Altmann | 6450 Oakland Ave., Apt. 2F St. Louis, MO 63139 | 5,100 | 51% |
| Ann Costanza | 16 Cedar St. Center Moriches, NY 11934 | 200 | 2% |
| Kevin Nguyen | 75-20 169th Street Fresh Meadows, NY 11366 | 200 | 2% |
| Nicholas Kingsbury | 218 Pawnee Street Ronkonkoma, NY 11779 | 200 | 2% |
| TOTAL | N/A | 10,000 | 100% |

**SCHEDULE B**

**FORM OF JOINDER AGREEMENT**

The undersigned is executing and delivering this Joinder Agreement pursuant to the Shareholders' Agreement for Botannis Labs Mo. Corp. (the "Company") dated December 18, 2019, (as amended, modified, restated or supplemented from time to time, the "Shareholders' Agreement"), among the Company and its Shareholders party thereto.

By executing and delivering this Joinder Agreement to the Company, the undersigned hereby agrees to become a party to, to be bound by, and to comply with the provisions of the Shareholders' Agreement in the same manner as if the undersigned were an original signatory to such agreement.

The undersigned agrees that the undersigned shall be a Shareholder, as such term is defined in the Shareholders' Agreement.

Accordingly, the undersigned has executed and delivered this Joinder Agreement as of

_____.

_____

Signature of Shareholder

Printed Name of Shareholder: _____

_____

**SCHEDULE C**

**SPOUSAL CONSENT**

The undersigned ("I" or "me") hereby certifies that I am the spouse of _____, a Stockholder of Botannis Labs Mo. Corp., a Missouri corporation (the "Company"), that I have read the Stockholders' Agreement among the Company and its Stockholders, dated as of October ___, 2019 (the "Agreement"), and I know, understand and am in agreement with the contents of the Agreement. I am aware that the Agreement provides that my spouse agrees to hold his Shares in the Company (the "Shares") subject to certain restrictions and to sell such Shares upon the occurrence of certain events. I am executing this Consent voluntarily. Before execution of this Consent, I was provided a fair and reasonable disclosure of the property and financial obligations of my spouse and given reasonable opportunity to seek independent legal advice.

Dated as of _____, 20___.

_____

Printed Name:

IN WITNESS WHEREOF, the undersigned directors have duly executed this Consent as of the date first set forth above.

_____

Matthew Wolf, Director

_____

Daniel Altmann, Director

_____

Mark Wolf, Director

IN WITNESS WHEREOF, the parties hereto execute this Agreement to be effective as of the Effective Date.

**THE COMPANY**:

Botannis Labs Mo Corp.

.

_____
By:    Matthew Wolf
Title: Secretary/Treasurer

**SHAREHOLDERS**:

_____
BLMO, LLC
By: Matthew Wolf
Its: Sole Member

_____
Daniel Altmann

_____
Ann Costanza

_____
Kevin Nguyen

_____
Nicholas Kingsbury

IN WITNESS WHEREOF, the undersigned directors have duly executed this Consent as of the date first set forth above.

_____
Matthew Wolf, Director


_____
Daniel Altmann, Director


_____
Mark Wolf, Director

Signature Page to Consent in Lieu of First Meeting of Board of Directors

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the day and year first above written.

STOCKHOLDER:

Daniel Altmann

_____

Address:    6450 Oakland Ave.
            Apt. 2F
            St. Louis, MO 63139
Email:      dna661@gmail.com

BUYER:

Botannis Labs, Inc.

_____

By:    Matthew Wolf
Title:  Secretary and Treasurer