UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MATTHEW D. WOLF, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )  No. 4:22-CV-397 PLC |
| DANIEL ALTMANN, | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Daniel Altmann's Motion to Strike Portions of Plaintiff's Complaint. [ECF No. 22] Plaintiff Matthew D. Wolf opposes the motion. [ECF No. 26]. For the reasons stated below, the motion to strike is denied.

**I.     Background**

Plaintiff, a minority shareholder of Botannis Labs Mo. Corp., Inc. (Botannis), filed a complaint seeking a declaratory judgment clarifying his legal obligations to fund the business operations and perform work on behalf of Botannis. [ECF No. 1 at ¶ 1] Plaintiff's complaint alleges he is a Colorado-based businessman with experience in the legal cannabis industry who sought out business opportunities in Missouri, which requires medical-marijuana businesses to be majority owned by Missouri citizens. [Id. at ¶¶ 9, 13-14]. Plaintiff and Jeffrey Altmann (Altmann) discussed opening a medical-marijuana business in Missouri with Plaintiff "contributing his expertise to the venture" and Altmann satisfying the residency requirement and navigating the regulatory process. [Id. at ¶¶ 13, 16]

Plaintiff alleges, while applying for a license for a testing laboratory, he learned Altmann was ineligible to own a medical-marijuana facility due to his criminal history.  [Id. at ¶ 18-20]. Plaintiff agreed to substitute Defendant Daniel Altmann, who is Altmann's brother and a Missouri resident with no experience in the medical-marijuana industry. [Id. at ¶ 21-22] Plaintiff alleges he agreed to the substitution but "made clear that the parties would have to agree to protections

reflecting [Plaintiff's] potential investment [of capital and expertise] were Botannis to obtain a license and the business to go forward." [Id. at ¶22]

Although Altmann filed the articles of incorporation for Botannis with the Missouri Secretary of State as the sole incorporator, eventually Defendant acquired 51% ownership interest in the company, Plaintiff acquired 43% ownership, and three other persons each acquired 2% ownership. [Id. at ¶ 28] In December 2019, Missouri issued Botannis a testing license, after which Botannis needed to pass a "commencement inspection" before it could begin operations. [Id. at ¶ 33-35] Botannis had one year to pass the "commencement inspection" or risk having the license revoked. [Id. at ¶ 34].

Plaintiff alleges that after Missouri issued the license, he attempted to reach an agreement with Defendant to memorialize the shareholders' rights and obligations to Botannis but Defendant never agreed to the terms. [Id. at ¶¶ 37-53] Plaintiff alleges Altmann was involved in the negotiations of the shareholders' agreement. [Id. at ¶ ¶ 49-53, 60-61] More than a year after negotiations ceased, Missouri revoked Botannis's license. [Id. at ¶ 62] Plaintiff alleges he was no longer interested in moving forward with the venture and suggested to Altmann that Plaintiff sell his share to a third-party operator. [Id. at ¶¶ 65-66]

Plaintiff alleges counsel for Defendant and Altmann then sent Plaintiff a demand letter, claiming damages of "at least several million dollars[.]" Attached to the demand letter was a draft complaint against Plaintiff for fraud and breach of fiduciary duty to Defendant, asserting Plaintiff had an obligation to capitalize Botannis and to perform work for the company based on correspondence between Plaintiff and Altmann. [Id. at ¶¶ 68-77] Plaintiff filed this declaratory judgment action against Defendant seeking to clarifying his legal obligations to Botannis and Defendant. [ECF No. 1 at ¶ 1] Plaintiff's complaint for declaratory judgment alleges in support:

15. Jeffrey Altmann aggressively markets himself and his supposed influence on Missouri lawmakers and regulators. "The simple truth is that I am a lobbyist," Altmann declared to *The Missouri Times* in an August 2017 article.

…

18. In preparing the license application, Wolf learned—for the first time—that Jeffrey Altmann had a criminal history. In fact, Jeffrey Altmann's criminal history includes a felony domestic-violence charge, vandalism charges, and a raft of vehicular violations.

19. Missouri medical-marijuana facilities cannot be owned, in whole or in part, by an individual who has a disqualifying felony offense, which is defined by 19 C.S.R. 30-95.010(8). In applying for a license, applicants must attest that the facility complies with this requirement.

20. By his own admission to Wolf, Jeffrey Altmann's criminal history disqualified him from obtaining a testing license under the state's license-application policies.

21. As a solution, Jeffrey Altmann proposed that his brother replace him on the application. At the time, Daniel Altmann had recently graduated from Missouri State University and was working in a support role at a personal-injury law firm in St. Louis. He had no experience in the medical-marijuana industry.

…

40. The draft documents reflected the understanding from the first business discussions between Wolf and Jeffrey Altmann (before Jeffrey Altmann revealed that he could not participate in Botannis because his criminal background would disqualify it from receiving a license to operate a testing laboratory in Missouri): Wolf could go forward with an investment in Botannis only if the value of his investment and intellectual property was protected under the parties' legal agreements.

…

64. On March 19, 2021, Jeffrey Altmann asked Wolf for his view on whether Botannis should appeal the Department's revocation of Botannis's testing license. Jeffrey Altmann also touted (as he had done before) testing opportunities for Kratom, an herbal extract that can cause opiate-like effects. The Mayo Clinic has described Kratom as unsafe and ineffective.

…

66. Wolf was not interested in moving forward with the venture because nothing had changed since Daniel Altmann refused to agree, or even to propose revisions, to the deal documents that would protect Wolf's intellectual property. Wolf also lacked confidence in the Altmanns after what had taken place, including (among other things) Jeffrey Altmann's initial failure to disclose his significant criminal history and Daniel Altmann's months-long refusal to engage about routine deal terms that would protect Wolf's investment and intellectual property.

Defendant filed a motion to strike pursuant to Federal Rule of Civil Procedure 12(f), arguing the allegations in the cited paragraphs are immaterial, impertinent, and scandalous.[1] [ECF Nos. 22 & 23] Defendant contends the allegations concerning Altmann's alleged criminal past and the statements he made about being a lobbyist are immaterial and impertinent because Plaintiff has not made a connection between the allegations and Plaintiff's duties to Defendant which are at issue in Plaintiff's declaratory judgment action. [ECF No. 23 at 3] Defendant maintains Plaintiff's allegations that Altmann has a criminal history are scandalous, are intended to insult Altmann "in a public filing[,]" and to attack Altmann's character, who is likely to serve as a witness in this matter. Finally, Defendant asserts the allegations may adversely affect Defendant, in that he is a law student intending to take the bar examination and a published news article about the suit "attaches [Defendant's] name to the allegations asserted against his brother, which would easily be misconstrued by future employers and bar examiners and therefore require unnecessary explanations." [ECF No. 23 at 4] Plaintiff counters that the allegations are not immaterial or impertinent, provide important context and background to the suit, and are not prejudicial. [ECF No. 26]

**II.    Legal Standard**

Rule 12(f) allows the Court to strike from a pleading, "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Immaterial claims are those lacking essential or important relationships to the claim for relief. Impertinent claims are those that do not pertain to the issues in question." Brown v. City of St. Louis, Missouri, 4:18-CV-1676 JMB, 2019 WL 3577491, at *4 (E.D. Mo. Aug. 6, 2019) (quoting Simms v. Chase Student Loan Servicing, LLC, No. 4:08-

---

[1] Defendant's motion requests that the Court strike paragraphs 15, 18-21, 40, 64, and 66. [ECF No. 22]. Defendant's memorandum in support of the motion to strike does not address paragraphs 40 and 64 and does not request the Court strike those paragraphs. [ECF No. 23] The Court will consider each of the paragraphs cited in Defendant's motion and will apply the arguments in Defendant's memorandum to paragraphs 40 and 64 to the extent possible.

4

CV-1480 ERW, 2009 WL 943552, at *2, n.3 (E.D. Mo. Apr. 6, 2009)). Scandalous allegations are "those that cast a derogatory light on someone, usually a party, and bear no relation to the controversy or prejudice the objecting party." White v. Dulany, 2021 WL 4129758, at *1 (W.D. Mo. September 9, 2021) (citations omitted).  A scandalous allegation is also described as "one that reflects unnecessarily on the defendant's moral character, or uses repulsive language that detracts from the dignity of the court." Id. (quoting Kay v. Sunbeam Prods., Inc., No. 2:09–CV–4065–NKL, 2009 WL 1664624, at *2 (W.D. Mo. June 15, 2009)).  However, "[i]t is not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action." Hammond v. 801 Restaurant Group, LLC, 2021 WL 2438916, at *6 (E.D. Mo.  June 15, 2021) (quoting Wright & Miller, § 1382 Motion to Strike—Redundant, Immaterial, Impertinent, or Scandalous Matter, 5C Fed. Prac. & Proc. Civ. § 1382 (3d ed.)).

"Matters that are not strictly relevant to the [principal] claim should not be stricken if they provide 'important context and background' to claims asserted." Hammond v. 801 Restaurant Group, LLC, 2021 WL 2438916, at *6 (E.D. Mo.  June 15, 2021) (quoting Stanbury Law Firm v. I.R.S., 221 F.3d 1059, 1063 (8th Cir. 2000)).  "[E]ven when technically appropriate and well-founded, Rule 12(f) motions are not granted in the absence of a showing of prejudice to the moving party." Id. (quoting Am. Home Assur. Co. v. Pope, 2-4057-CV-C-SOW, 2005 WL 1312975, at *1 (W.D. Mo. June 1, 2005) (internal citations omitted). "The party moving to strike bears the burden of demonstrating that the challenged allegations are so unrelated to [the plaintiff's] claim that they are devoid of merit, unworthy of consideration and are unduly prejudicial." Hall v. City of St. Louis, 465 F.Supp.3d 937, 952 (E.D. Mo. 2020) (quoting Whitlock-Kincade v. United States DOD, 4:06-CV-895 RWS, 2007 WL 781810 (E.D. Mo. March 13, 2007)). Although courts enjoy "broad discretion" in determining whether to strike a party's pleadings, such an action is "an extreme measure." Stanbury Law Firm, P.A. v. IRS, 221 F.3d 1059, 1063 (8th Cir. 2000). For this reason, motions to strike are "viewed with disfavor and are infrequently granted." Id.

**III.     Discussion**

The challenged paragraphs fall into two general categories, those alleging Altmann has a criminal history and those that do not.  The Court will address the paragraphs which do not contain any mention of Altmann's alleged criminal history first. These paragraphs: (1) allege Altmann markets himself as a lobbyist (paragraph 15), (2) recite a Missouri statute prohibiting individuals with "disqualifying felony offenses" from owning medical-marijuana facilities (paragraph 19), (3) allege Altmann proposed that his brother, Defendant, replace him on the application for the license (paragraph 21), and (4) allege Altmann inquired about appealing the state's revocation of Botannis's testing license and "touted… testing opportunities for Kratom, an herbal extract that can cause opiate-like effects" and which the Mayo Clinic has described as "unsafe and ineffective" (paragraph 64).

Defendant argues Plaintiff's allegation that Altmann markets himself as a lobbyist should be stricken because there is no connection between the allegation and Plaintiff's duties to Defendant and  "allegations directed at the character of a third party serve no purpose as [they] relate[] to the claims" in the complaint. [ECF No. 23 at 3]The Court finds paragraph 15 alleging Altmann previously represented that he works as a lobbyist provides context and background to Plaintiff's claims and does not constitute an allegation directed at Altmann's character.  Furthermore, Defendant has failed to allege any prejudice resulting from the allegation. See Hammond, 2021 WL 2438916, at *6 ("Rule 12(f) motions are not granted in the absence of a showing of prejudice to the moving party.").

As to paragraphs 19, 21, and 64, Defendant provides no argument supporting his request for the Court to strike these allegations. In the absence of any legal argument supporting his request or any suggestion that he is prejudiced by the allegations, Defendant's motion to strike these paragraphs will be denied. Defendant has failed to meet his burden of demonstrating that the allegations in

paragraphs 15, 19, 21, and 64 are so unrelated to Plaintiff's claim that they are devoid of merit, unworthy of consideration, and are unduly prejudicial. See Hall , 465 F.Supp.3d at 952.

The remaining paragraphs challenged by Defendant contain allegations that Altmann has a criminal history. These includes allegations that: (1) Plaintiff learned during the application process that Altmann has "a felony domestic-violence charge, vandalism charges, and a raft of vehicular violations" (paragraph 18), (2) Altmann admitted to Plaintiff that his criminal history disqualified him from obtaining a testing license under the state's license-application policies (paragraph 20), (3) the draft shareholder agreement documents reflected the understanding between Plaintiff and Altmann before Altmann "revealed that he could not participate in Botannis because his criminal background would disqualify it from receiving a license to operate a testing laboratory in Missouri" (paragraph 40); and (4) Plaintiff decided not to further participate in Botannis because he "lacked confidence in the Altmanns" after "Altmann's initial failure to disclose his significant criminal history" and Defendant's "refusal to engage about routine deal terms that would protect [Plaintiff's] investment and intellectual property" (paragraph 66).

Defendant contends the allegations regarding Altmann's "criminal past" are immaterial and impertinent because there is no connection between the allegations and Plaintiff's duties to Defendant, which are the subject of Plaintiff's lawsuit. Defendant also argues the allegations are scandalous character attacks against a potential third-party witness[2] and are intended to insult Altmann in a public forum. Defendant also suggests the allegations against his brother may be "misconstrued by future employers and bar examiners and therefore require unnecessary explanations" by Defendant.

---

[2] In his memorandum, Defendant's argues "by alleging it in the Complaint, Plaintiff may be seeking to put [Altmann's] alleged criminal past at issue in order to circumvent the proscriptions of Fed. R. Evid. 404." Defendant, however, provides no substantive analysis of Rule 404. As such, the Court will not address the implications of Rule 404 at this time.

Plaintiff counters that the complaint's limited references to Altmann's criminal history provide important context and background including why Defendant was chosen as a majority shareholder of Botannis and why Altmann is not a Botannis shareholder, director, or officer despite being involved in Botannis since the early stages.  Plaintiff argues the allegations are not scandalous as they are a matter of public record. Finally, Plaintiff contends Defendant has not demonstrated any prejudice from the allegations because Defendant's brother's criminal history would have no bearing on any future character-and-fitness review of Defendant.

While allegations with "criminal overtones" may be stricken in some situations (Kay, No. 2:09-CV-4065-NKL, 2009 WL 1664624, at *1), in this case the challenged allegations describe acts and events relevant to the action and provide context and background to Plaintiff's claims. See Garrett v. Cassity, No. 4:09-CV-1252 ERW, 2010 WL 3908752, at *1 (E.D. Mo. September 30, 2010) (denying motion to strike an allegation regarding a defendant's criminal conviction, finding the plaintiffs made a "colorable argument" it was relevant to the litigation and the defendant failed to demonstrate prejudice). Plaintiff's complaint suggests Altmann was intimately involved in the formation of the company, and that Plaintiff's and Altmann's agreements and expectations about the operation of the company are relevant to Plaintiff's declaratory judgment action seeking to clarify his legal obligations to Defendant and Botannis.  Furthermore, Defendant's assertion that allegations that his brother has a criminal history will be "misconstrued by future employers and bar examiners" necessitating "explanations" is insufficient to constitute prejudice justifying striking the allegations from the complaint.  The Court finds the challenged paragraphs are neither immaterial, impertinent, nor scandalous and that Defendant has failed to demonstrate he will be prejudiced by the inclusion of the allegations in the complaint. Because paragraphs 18, 20, 40, and 66 are relevant to Plaintiff's claims and are not so scandalous in nature as to cause prejudice to Defendant, Defendant's motion to strike these paragraphs is denied.

**IV.    Conclusion**

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendant's Motion to Strike Portions of Plaintiff's Complaint [ECF No. 22] is **DENIED**.

```
_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE
```

Dated this ___ day of July, 2022